Gary Wayne ROBERTSON

v.

Lori Vanhooser ROBERTSON.

Supreme Court of Tennessee,
at Knoxville.

April 4, 2002.

Selma Cash Paty and Sherry Bailey Paty, Chattanooga, for the appellant, Gary Wayne Robertson.

Leroy Phillips, Jr., Chattanooga, for the appellee, Lori Vanhooser Robertson.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and WILLIAM M. BARKER, JJ., joined.

We granted this appeal to address the means for determining whether a disadvantaged spouse can be "rehabilitated" under § 36–5–101(d)(1) of the Tennessee Code Annotated. We hold that a trial court must consider all relevant factors in § 36–5–101(d)(1) to determine whether an economically disadvantaged spouse can be rehabilitated. Because the trial court properly applied the relevant statutory factors, we affirm the trial court's award of alimony, as modified, in this case.

Gary Wayne Robertson and Lori Vanhooser Robertson were married for twenty-two years before the parties filed for divorce in late 1996. On June 2, 1997, the trial court awarded Ms. Robertson a divorce on grounds of adultery. The court awarded Ms. Robertson net marital assets in the amount of $5,511.51. Mr. Robertson was awarded net assets of $8,624.17.[1] The

---

1.

| | Ms. Robertson | | | Mr. Robertson | | | |
|---|---|---|---|---|---|---|---|
| | Assets | | Debts | | Assets | | Debts |
| Marital home | $ 92,300.00 | Mortgage | $66,000.00 | TVA Retirement | $43,823.45 | Consumer debt | $43,454.28 |
| Toyota Camry | $ 9,000.00 | Car loan | $11,622.80 | Ford Bronco | $ 3,200.00 | | |

trial court awarded joint custody of the parties' sixteen-year-old son, Josh, and awarded child support to Ms. Robertson.

The trial court found that Mr. Robertson's monthly expenses, after the division of liabilities, would exceed his monthly income by $227.42. Beginning in September 1997, when Ms. Robertson's new teaching position began, her monthly expenses would exceed her monthly income by $709.44. Ms. Robertson's only assured income before September 1997 would be the $658 monthly child support payments. The trial court therefore ordered Mr. Robertson to pay, as rehabilitative alimony, the monthly mortgage payment and Toyota car payment, totaling $1,013.90, and an additional $500 per month. The trial court ordered the reduction of rehabilitative alimony to $250 per month for a twelve-month period following the commencement of Ms. Robertson's teaching job. The court also ordered the parties to pay their own attorneys' fees.

The Court of Appeals affirmed the trial court's division of marital property and modified the trial court's judgment to reflect that primary residential custody of Josh would be with Ms. Robertson. The court also held that the trial court erred in calculating the amount of child support based upon the parties' relative earnings and further erred in the manner in which Mr. Robertson's future overtime earnings were used for computation. The Court of Appeals calculated Mr. Robertson's income, including overtime, at $60,346. The court therefore modified the award of child support to $761, based upon the Child Support Guidelines.

The Court of Appeals similarly modified the trial court's award of alimony, awarding Ms. Robertson alimony in futuro in the amount of $250 per month to be increased to $600 per month when Mr. Robertson's child support obligation ceased. Finally, the Court of Appeals held that the trial court abused its discretion in failing to award Ms. Robertson attorney's fees. Mr. Robertson filed an application for permission to appeal.

Subsequently, on April 24, 2000, this Court issued its opinion in *Crabtree v. Crabtree,* 16 S.W.3d 356 (Tenn.2000). We ordered the Court of Appeals to reconsider its holding in this case in light of *Crabtree.* On remand, the Court of Appeals held that Ms. Robertson could not be rehabilitated to a reasonable standard of living, viewed in the context of her pre-divorce standard of living. The court therefore adhered to its original opinion awarding Ms. Robertson alimony in futuro. We granted review.

## ANALYSIS

■ Section 36–5–101(d)(1) of the Tennessee Code Annotated provides that "[i]t is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance." Tenn.

| | | | | | | |
|---|---|---|---|---|---|---|
| Personalty | $ 3,915.00 | Consumer debt | $ 3,467.04 | GMC S-15 | $ 1,800.00 | |
| | | Student loans | $18,613.65 | Personalty | $ 3,255.00 | |
| Subtotals | $105,215.00 | | $99,703.49 | | $52,078.45 | $43,454.28 |
| Net Award | | | $ 5,511.51 | | | $ 8,624.17 |

The values in this table are taken from the parties' statements of assets and liabilities, which were essentially undisputed at trial. Contrary to the trial court's findings, these calculations reflect a net value on the marital home of $26,300 and a net loss on the Toyota Camry of $2,622.80.

Code Ann. § 36–5–101(d)(1). If rehabilitation is not feasible and long-term support is necessary, then the trial court may grant an award of alimony in futuro. *Id.; Crabtree*, 16 S.W.3d at 359.

In *Crabtree*, this Court addressed whether a trial court may order successive awards of rehabilitative alimony and alimony in futuro in the initial divorce decree. We held that the legislature has demonstrated a preference for an award of rehabilitative alimony and held that alimony in futuro should be awarded only when rehabilitation is not feasible. *Crabtree*, 16 S.W.3d at 358–59. As a result, we held that a concurrent award of both types of alimony is inconsistent. *Id.* at 360.

This Court then reviewed the facts of the case to determine whether Ms. Crabtree could be rehabilitated. We reversed the holding of the Court of Appeals that rehabilitative alimony would not place Ms. Crabtree on "equal footing with" Mr. Crabtree or allow her to "continue living in the manner in which she had become accustomed" during the marriage. *Id.* at 359. We noted that the Court of Appeals' holding relied on language from *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn.1995), stating that the award of alimony in futuro would not return the wife to her economic position before divorce but would provide her with "closing in" money. *Crabtree*, 16 S.W.3d at 359. This Court disagreed with the Court of Appeals' reliance on *Aaron* because the statement in *Aaron* was "intended neither to provide a new standard for awarding alimony nor to suggest that every spouse should be entitled to be placed in the same financial condition occupied prior to the divorce." *Crabtree*, 16 S.W.3d at 359–60. Instead, this Court reviewed the facts to determine whether alimony in futuro was necessary to "further the legislative purpose of encouraging divorced spouses to become self-sufficient."

*Id.* at 360. Noting that both parties had ample education to compete in the workforce, this Court concluded that Ms. Crabtree's rehabilitation was feasible. *Id.* Accordingly, we affirmed the trial court's award of rehabilitative alimony for a period of five years and reversed the award of alimony in futuro. *Id.*

▮▮▮ The marital standard of living is one of several factors enumerated by the legislature for consideration in awarding alimony. Tenn.Code Ann. § 36–5–101(d)(1)(I). We disagree, however, with the Court of Appeals' conclusion that this sole factor is the standard by which a court must determine whether an economically disadvantaged spouse can be rehabilitated. Instead, a trial court must consider every relevant factor in § 36–5–101(d)(1) to determine the nature and extent of support, which includes the decision to award rehabilitative alimony. The prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony. *See id.* at 359; *Self v. Self*, 861 S.W.2d 360, 361 (Tenn.1993); *see also Blaine v. Blaine*, 336 Md. 49, 646 A.2d 413, 423 (1994). The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage. *See Crabtree*, 16 S.W.3d at 359–60. However, rehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. *See Isbell v. Isbell*, 816 S.W.2d 735, 738–39 (Tenn.1991); *see also In re Marriage of Grauer*, 478 N.W.2d 83, 85 (Iowa Ct.App. 1991) ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that

spouse to become self-supporting.' "). It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment. *See, e.g., Crabtree,* 16 S.W.3d at 360–61.

■ All relevant factors, including those set out in § 36–5–101(d)(1), must be considered on a case-by-case basis to determine the nature and extent of support. Tenn.Code Ann. § 36–5–101(d)(1).[2] Factor (H) requires the trial court to consider the division of marital property when awarding alimony. Tenn.Code Ann. § 36–5–101(d)(1)(H). The division of marital property involves the distribution of both marital assets and marital debts. *See Anderton v. Anderton,* 988 S.W.2d 675, 679 (Tenn.Ct.App.1998); *Mondelli v. Howard,* 780 S.W.2d 769, 773 (Tenn.Ct.App.1989). We encourage trial courts to use the division of marital property to assist in meeting the disadvantaged spouse's financial needs when feasible. *See Crabtree,* 16 S.W.3d at 361 n. 4 ("In cases in which there is a disparity between the relative earning capacities of the parties, a trial court also may consider adjusting the award of marital assets to assist the disadvantaged spouse."); *see also Renfro v. Renfro,* 848 P.2d 830, 834 (Alaska 1993) (establishing a preference for meeting the parties' needs with the division of marital property, rather than with alimony). Section 36–4–121 of the Tennessee Code Annotated does not require an equal division of marital property but an equitable division. Tenn.Code Ann. § 36–4–121(a)(1); *see Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988). When practical, therefore, a trial court should consider awarding more assets to an economically disadvantaged spouse to provide future support, rather than relying solely upon an award of alimony. When there are few marital assets but a considerable amount of marital debt, a trial court should similarly consider awarding a disadvantaged spouse a lesser amount of marital debt. Careful distribution of the marital property may assist the disadvantaged spouse in achieving rehabilitation in furtherance of the legislative policy of eliminating spousal dependency.

■ Trial courts should not refrain, however, from awarding long-term support

---

**2.** The enumerated factors for consideration by the trial court when setting alimony are:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36–4–121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–5–101(d)(1).

when appropriate under the enumerated statutory factors. *See Anderton,* 988 S.W.2d at 682 ("The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support."). As with any award of spousal support, the two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001). A trial court has wide discretion in awarding alimony, and appellate review of the trial court's findings of fact is de novo upon the record accompanied by a presumption of the correctness of the findings. *Crabtree,* 16 S.W.3d at 360 (citing Tenn. R.App. P. 13(d)); *see also Goodman v. Goodman,* 8 S.W.3d 289, 293 (Tenn.Ct. App.1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.").

■ Turning to the facts in this case, we conclude that the trial court's award of rehabilitative alimony, rather than alimony in futuro, was not an abuse of discretion. Ms. Robertson primarily had been a homemaker, working part-time as a substitute teacher between 1991 and 1995. She became a full-time student in 1995 and had recently obtained a four-year degree in education. She planned to start a career as a teacher in August 1997. Her anticipated annual salary from the new teaching position was $22,500, and she expected to receive annual cost-of-living salary increases. Ms. Robertson testified that to substantially increase her salary, however, she would need to earn her master's degree.

*See* Tenn.Code Ann. § 36–5–101(d)(1)(A), (B). At the time of the divorce, Ms. Robertson was working in an interim teaching position that would end approximately two and one-half months before her permanent position began. She was, however, in the process of seeking a summer job to earn money during that period. *See* Tenn.Code Ann. § 36–5–101(d)(1)(A). Ms. Robertson's monthly expenses totaled approximately $2,668.[3] *See* Tenn.Code Ann. § 36–5–101(d)(1)(A).

Mr. Robertson, on the other hand, had completed high school and taken some college courses but did not obtain a college degree. *See* Tenn.Code Ann. § 36–5–101(d)(1)(B). He was employed as a shift coordinator with TVA, where he had worked for twenty years. Mr. Robertson's base yearly salary was $52,013, and he had worked overtime in the past several years. In 1995, Mr. Robertson's gross income was $62,658, and in 1996, his gross income was $76,687. He testified, however, that the $25,000 in overtime he earned in 1996 was abnormally high. Mr. Robertson estimated that, on average, he earned approximately $250 per month in overtime. We agree, however, with the Court of Appeals' holding that Mr. Robertson's yearly income, including overtime, should be calculated at $60,346. This number is based upon Mr. Robertson's total earnings of $22,436.98 from January 1 through May 11, 1997. *See* Tenn.Code Ann. § 36–5–101(d)(1)(A); *see also Storey v. Storey,* 835 S.W.2d 593, 596–97 (Tenn.Ct.App.1992); *cf.* Tenn. Comp. R. & Regs. 1240–2–4–.03(3)(a), (b). Mr. Robertson's monthly expenses, including the $761 per month in child support awarded by the Court of Appeals, were approximately $4,149.10.[4] *See* Tenn.Code Ann. § 36–5–101(d)(1)(A).

---

**3.** This figure is calculated from Ms. Robertson's income and expense statement and from her assets and liabilities statement.

**4.** This figure is calculated from Mr. Robertson's income and expense statement and from his assets and liabilities statement.

The parties were married for approximately twenty-two years before their divorce, and they were both forty-two years old at the time of trial. *See* Tenn.Code Ann. § 36–5–101(d)(1)(C), (D). Neither party exhibited any mental or physical disabilities. *See* Tenn.Code Ann. § 36–5–101(d)(1)(D), (E). Mr. Robertson received an $8,624.17 net share of the marital property, and Ms. Robertson's net award was $5,511.51. *See* Tenn.Code Ann. § 36–5–101(d)(1)(H). Neither party had noteworthy separate assets apart from the distributed marital property, each owning a few pieces of antique furniture. *See* Tenn. Code Ann. § 36–5–101(d)(1)(G). Unfortunately, due to the overwhelming amount of accumulated marital debt, the parties will not be able to enjoy the standard of living established during the marriage. *See* Tenn.Code Ann. § 36–5–101(d)(1)(I). The trial court made no finding regarding the parties' relative contributions to the marriage. *See* Tenn.Code Ann. § 36–5–101(d)(1)(J). Although the court awarded the divorce to Ms. Robertson on grounds of adultery, the court made no reference to the parties' relative fault in its award of alimony. Consideration of relative fault, however, is within the discretion of the trial court. Tenn.Code Ann. § 36–5–101(d)(1)(K) (relative fault may be considered "where the court, in its discretion, deems it appropriate to do so"). We find no evidence requiring application of either factor (J) or (K) in this case.

Having considered all relevant factors, we conclude that the trial court did not abuse its discretion in awarding Ms. Robertson rehabilitative alimony rather than alimony in futuro. In light of Ms. Robertson's college education and new employment, we agree that Ms. Robertson, though economically disadvantaged, is capable of rehabilitation. An award of rehabilitative alimony is supported by the evidence and is not contrary to the public policies reflected in the applicable statutes. *See Kinard v. Kinard,* 986 S.W.2d 220, 234 (Tenn.Ct.App.1998). A trial court has wide latitude in setting alimony, and we are not inclined to "second guess" the trial court's decision absent a manifest abuse of discretion. *See Goodman,* 8 S.W.3d at 293.

■■■■ We hold, however, that the award of $250 per month for twelve months was clearly unreasonable. "A trial court acts within its discretion when it applies the correct legal standard and reaches a decision that is not clearly unreasonable." *Bogan v. Bogan,* 60 S.W.3d 721, 733 (Tenn.2001). The trial court's award of alimony was based in part on an inaccurate calculation of the net marital asset distribution and an assessment of Mr. Robertson's yearly income that failed to incorporate his income from overtime. Moreover, an increased award of rehabilitative alimony could assist Ms. Robertson in obtaining her master's degree to increase her earning capacity in the future. Considering also Ms. Robertson's share of the marital debt in relation to her earning capacity, we find that a longer period of rehabilitative alimony is appropriate in this case. We therefore increase the award of rehabilitative alimony to $250 per month for a period of forty-eight months.

## CONCLUSION

We hold that a trial court must consider all relevant factors in § 36–5–101(d)(1) to determine whether an economically disadvantaged spouse can be rehabilitated. Applying the statutory factors to the facts in this case, we conclude that the trial court did not abuse its discretion by awarding rehabilitative alimony to Ms. Robertson, rather than alimony in futuro. We further hold, however, that the award of $250 per month for twelve months was clearly un-

reasonable. We therefore increase the award to $250 per month for forty-eight months. The Court of Appeals' award of alimony in futuro is reversed. Having reviewed the remaining issues in this case, we affirm the Court of Appeals in all other respects. This case is remanded to the trial court for further proceedings consistent with this opinion and for an assessment of attorneys' fees ordered by the Court of Appeals and on appeal to this Court. Costs of appeal to the Court of Appeals shall remain as ordered. Costs of appeal to this Court are taxed to the appellant, Lori Vanhooser Robertson, for which execution may issue if necessary.