IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 27, 2002 Session

## RITA JO FINDLEY JONES v. CLINTON GARLAND JONES

**Appeal from the Probate & Family Court for Cumberland County**
**No. 13319     Steven C. Douglas, Judge**

**FILED AUGUST 15, 2002**

**No. E2001-03112-COA-R3-CV**

In this divorce case, the issues raised on appeal all pertain to the trial court's alimony award. That court awarded Rita Jo Findley Jones ("Wife") alimony of $756 per month "until the death or remarriage of [Wife] or until such time as the court modifies its order in this regard." Clinton Garland Jones ("Husband") appeals, contending that Wife is not entitled to alimony; that, if she is entitled to spousal support, she should be awarded rehabilitative alimony rather than alimony *in futuro*; and that, in any event, $756 per month "is excessive." We modify the trial court's award of alimony. As modified, it is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Vivian E. Warner, Crossville, and Allison M. Barker, Crossville, for the appellant, Clinton Garland Jones.

James S. Smith, Jr., Rockwood, for the appellee, Rita Jo Findley Jones.

**OPINION**

I.

The parties were married on November 17, 1990. Wife had been married on three previous occasions; this was Husband's second marriage. No children were born to this union. Wife's daughter by a previous marriage and the daughter's two children lived with the parties for a period of time during their marriage.

The parties separated on June 8, 2000. Wife remained in the former marital residence. It is located on 5 ½ acres of land. Husband moved into a trailer. On May 9, 2001, Wife sued Husband

for divorce, alleging inappropriate marital conduct. Following a hearing on October 12, 2001, the trial court rendered its opinion from the bench. The court granted Wife a divorce on the ground alleged; divided the parties' property and debts, as had been agreed to by the parties; and awarded Wife alimony *in futuro* of $756 per month. The judgment of divorce incorporates a transcript of the trial court's oral opinion. The judgment was entered November 28, 2001.

## II.

Our standard of review is *de novo* on the record of the proceedings below. Tenn. R. App. P. 13(d). The record comes to us with a presumption that the trial court's factual findings are correct. ***Id***. We must honor this presumption unless the evidence preponderates against the trial court's factual determinations. ***Id***.

## III.

We are asked to review the nature, duration, and amount of the trial court's alimony award. We do so mindful of the well-established principle that a trial court has wide discretion on the subject of alimony. ***Robertson v. Robertson***, 76 S.W.3d 337, 342 (Tenn. 2002). "'As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.'" ***Id***. (quoting ***Goodman v. Goodman***, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999)).

Whether, and to what extent, Wife is entitled to spousal support are issues that require us to focus on the relevant portions of T.C.A. § 36-5-101 (2001). As the Supreme Court has pointed out on numerous occasions, that statute expresses a clear preference for rehabilitative alimony "whenever possible." T.C.A. § 36-5-101(d)(1) ("It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance."). *See Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000) ("...the legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse."). *See also Robertson*, 76 S.W.3d at 340 ("The prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony.")

As with all issues pertaining to alimony, "a trial court has wide discretion in determining whether an award of alimony should be rehabilitative or in futuro." ***Crabtree***, 16 S.W.3d at 360. Since this determination pertains to "whether the granting of an order for payment of support and maintenance to a party is appropriate" and, if so, the "nature" of such a payment, all relevant factors including those set forth in T.C.A. § 36-5-101(d)(1)(A)-(L) must be considered. ***Crabtree***, 16 S.W.3d at 358; ***Robertson***, 76 S.W.3d at 341.

The concept of rehabilitation and the legislature's preference for rehabilitative alimony, "whenever possible," have been addressed by the Supreme Court in several contexts. In the *Crabtree* case, the Supreme Court stated the following:

> In *Self* [*v. Self*, 861 S.W.2d 360 (Tenn. 1993)], we held that § 36-5-101 reflects an obvious legislative policy to eliminate the dependency of one ex-spouse upon the other and to relieve the parties of "impediments incident to the dissolved marriage." *Id*. at 361.

*Id.* at 359. The Supreme Court has also referred to "the legislative purpose of encouraging divorced spouses to become self-sufficient." *Id*. at 360.

In the recent case of *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002), the Supreme Court referred to an opinion of the Iowa Court of Appeals,[1] in pointing out that "rehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training." *Id*. at 340. It is clear from the *Robertson* opinion, however, that rehabilitative alimony may also be appropriate where further education or training are not implicated by the facts:

> [Rehabilitative alimony] may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Id*. at 341. *See also Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991) ("The concept of rehabilitation in [T.C.A. § 36-5-101] is the improvement of one's present and future capacity to function independently in society."); *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997) (describing rehabilitative alimony as "temporary income during a period of adjustment and effort of the dependent spouse to become partially or totally self sufficient.")

"If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only." *Crabtree*, 16 S.W.3d at 360. If, on the other hand, the court finds that economic rehabilitation is "not feasible in consideration of all relevant factors," it "may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient...." T.C.A. § 36-5-101(d)(1). *See also Crabtree*, 16 S.W.3d at 359. In the final analysis, a trial court's reasoned application of all relevant factors will guide the court in deciding whether spousal support should be awarded and, if so, "the nature, amount, length of term, and manner of payment." T.C.A. § 36-5-101(d)(1). "As with any award of spousal support, the two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay." *Robertson*, 76 S.W.3d at 342.

---

[1]*In re Marriage of Grauer*, 478 N.W.2d 83, 85 (Iowa Ct. App. 1991) ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'")

IV.

Against the following background, we now proceed to review the evidence touching upon the trial court's decision to grant Wife alimony *in futuro* of $756 per month.

Wife is a security officer at Roane State Community College, a position she has held since 1985.[2] Her gross salary in 2001 from this employment was projected to be $23,265. In addition, she was on track to earn gross wages of $2,600 in the same year from a part-time job cleaning an office on Sundays. She quit her part-time job on September 10, 2001, approximately a month before the final hearing below. She based her decision to quit on her doctor's statement that she "would benefit from a reduced workload." Her doctor testified by deposition that she was suffering from stress due to her "marital situation." He opined that "it made sense to me to take the extra job out of the equation since I was unable to take the marital situation out of the equation." The trial court found that Wife was physically able to work the extra job. It found that her net wages per month from both jobs was $1,744. The court also found that Husband's average annual gross wages for the years 1999-2001 was $55,112. A payroll document in the record reflects that Husband's average net wages per month for the 8 ½ months through September 16, 2001, with overtime, were $3,866. Without overtime, his average net wages per month were $2,356. The evidence does not preponderate against these determinations with respect to the parties' wages. *See* T.C.A. § 36-5-101(d)(1)(A).

Wife is vested in the retirement plan of the Tennessee Consolidated Retirement System. She is eligible to retire July 27, 2008, with a monthly retirement of $660. If she works to age 65, her monthly retirement is $808. Husband is vested in the retirement plan of the National Asbestos Workers Pension Fund. It is not clear from the record when he is first eligible to retire, but the trial court noted that "he's got eleven good years in front of him." Per the parties' agreement, each was awarded his/her individual retirement. *See* T.C.A. § 36-5-101(d)(1)(A).

Wife submitted an affidavit of expenses reflecting total monthly expenses of $2,652.40. The trial judge concluded that there was, in his words, "a little bit of inflation in [her] expenses." However, he noted that the affidavit fails to reflect "trips they used to make and don't make now." He pegged her expenses at $2,500. He arrived at the monthly alimony figure of $756 by deducting her projected monthly net income of $1,744 from $2,500.

The evidence preponderates that Wife's affidavit was *more* than a "little bit" inflated. Her canceled checks, analyses prepared by Husband's counsel, and a rigorous and successful cross-examination of Wife cast significant doubt on the credibility of the amounts of the following claimed monthly expenses:

---

[2]Her employment started some five years before the parties' marriage.

| | |
|---|---:|
| Food | $ 400 |
| Clothes and accessories | 100 |
| Home maintenance & upkeep | 200 |
| Ground maintenance | 100 |
| Personal hygiene products | 150 |
| Medical and pharmaceutical (after insurance) | 175 |
| Car maintenance | 100 |
| Monthly gas | 140 |
| | $1,365 |

The true total expenses for these items would appear to be more in the range of $700.[3]

We conclude that the evidence preponderates against the trial court's finding that Wife's monthly needs amount to $2,500. We find that even after making an allowance for trips and vacations, Wife's monthly expenses would approximate $2,137. It should also be pointed out that Wife's estimated expenses include a house payment of $644.27. This is based on the parties' mortgage which carries an interest rate of 10.95%. The trial court took judicial notice of the fact that mortgage rates have dropped. In view of this drop in rates, there is every reason to believe that Wife could refinance the mortgage on the former marital residence and thereby reduce her monthly payment. Husband's estimated monthly expenses of $1,637 were not seriously questioned at trial. *See* T.C.A. § 36-5-101(d)(1)(A).

Prior to the parties' marriage, Wife received an associate's degree in criminal justice from Roane State Community College. Husband completed high school. There is no proof in the record that either party would benefit from further education or training. *See* T.C.A. § 36-5-101(d)(1)(B).

The parties were married some nine and a half years before their separation on June 8, 2000. *See* T.C.A. § 36-5-101(d)(1)(C). At the time of the hearing below, both of the parties were 53 years of age. *See* T.C.A. § 36-5-101(d)(1)(D). While each of the parties testified as to some physical infirmities, there was no proof that any of their medical problems would impact their ability to earn a living. *See* T.C.A. § 36-5-101(d)(1)(E). Factor (F) with respect to minor children is not implicated by the facts of this case.

The trial court approved the parties' property settlement. As noted earlier, Wife remained in the former marital residence. She received it in the divorce subject to the mortgage indebtedness. Pictures in the record reflect an attractive house with a creek running through the property, which, as previously noted, is some 5 ½ acres in size. The property is very nicely landscaped with

---

[3]This would reduce Wife's projected expenses to $1,987.40. A trip and vacation allowance of $150 per month – *i.e.*, $1,800 per year – would increase this to $2,137.40.

numerous plantings. Each party was burdened with his/her individual debts. Wife claimed monthly payments on these debts of $200 in her affidavit of income and expenses. The proof reflects that some of these debts will be paid within a two-year time frame. *See* T.C.A. § 36-5-101(d)(1)(G) & (H).

There is no evidence in the record suggesting that the standard of living of the parties – especially Wife – will be significantly impacted by the parties' divorce. *See* T.C.A. § 36-5-101(d)(1)(I). There is also no evidence that either party made a disproportionate contribution to the marriage. In fact, the court did not mention contributions in his opinion. Each of the parties had completed their education and established their current employment prior to their marriage. *See* T.C.A. § 36-5-101(d)(1)(J).

The trial court granted Wife the divorce "based on the admitted inappropriate marital conduct of [Husband]."[4] However, the court made no reference to the parties' relative fault in connection with the alimony award. *See* T.C.A. § 36-5-101(d)(1)(K). The trial court did not mention any factors not specifically mentioned in T.C.A. § 36-5-101(d)(1)(A)-(K). *See* T.C.A. § 36-5-101(d)(1)(L).

V.

We disagree with Husband's contention that wife is not entitled to any alimony. The evidence does not preponderate against a finding that Wife has need of some alimony for some period of time and that Husband has the ability to pay some alimony.

We do find that the evidence preponderates against the trial court's implicit finding that Wife cannot be rehabilitated. She has an associate's degree; has been employed in the same job since 1985; has the demonstrated ability to earn approximately $1,744 net income per month; is in relatively good health as she approaches her mid 50's; is entitled to a vested pension starting as early as her age 62; and has an attractive, well-maintained, seven-room residence on a relatively large tract of land, which also houses a garage and barn.[5]

We find that wife can be economically rehabilitated with some assistance from Husband. We modify the trial court's award of alimony to change it from an *in futuro* award to an award of rehabilitative alimony of $500 per month for four years. We find that such an award will enable Wife "to become partially or totally self sufficient." *See **Loria***, 952 S.W.2d at 838. There is every reason to believe that Wife will be able "to function independently in society." ***Isbell***, 816 S.W.2d at 739. This award is in keeping with "the legislative purpose of encouraging divorced spouses to become self-sufficient." ***Crabtree***, 16 S.W.3d at 360.

---

[4]Husband admitted pushing Wife in January, 2000, causing her to fall over a coffee table.

[5]When the parties married, Wife was living in a trailer.

The modification of the trial court's award of alimony is effective October 1, 2001, the start-date of the trial court's alimony award of $756. Husband will be entitled to a credit against this new obligation for all alimony payments made by him to Wife on or after October 1, 2001.

VI.

The trial court's alimony award is modified as set forth in this opinion. As modified, the alimony award is affirmed. This case is remanded for the entry of an order specifying the payments made by Husband on and after October 1, 2001, and setting forth the amount by which the payments made by Husband on and after October 1, 2001, exceed $5,500.[6] To the extent Husband has overpaid his alimony obligation – as established by this opinion – he will not owe Wife any payments until he has recouped the overpayment to be credited to him at the rate of $500 per month.

Costs on appeal are taxed to Rita Jo Findley Jones.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[6] This is the total of the $500 per month rehabilitative alimony payments for the period October, 2001, through August, 2002, inclusive.

-8-