IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 10, 2010 Session

## IN RE LINDSAY R.

**Appeal from the Juvenile Court for Washington County**
**No. J3691      James A. Nidiffer, Judge**

---

**No. E2010-00391-COA-R3-JV - FILED DECEMBER 29, 2010**

---

This is an action to establish paternity and set child support filed by the State of Tennessee on behalf of Rochelle L. ("Mother"), the mother of a child born August 6, 1988. The putative father is James G. ("Father"). The trial court held Father liable for back child support of $123,334 by a default judgment entered September 3, 2008. Father filed a post-judgment motion challenging the judgment for lack of service of process. The trial court denied the motion upon finding that Father had "notice" of the action. As a consequence of this finding, the court held that the judgment was valid pursuant to Tenn. Code Ann. § 36-2-305(b)(5)(2010). Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

William L. Gribble, II, Maryville, Tennessee, for the appellant, James G.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Warren A. Jasper, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee, ex rel. Rochelle L.

## OPINION

I.

As previously noted, Mother gave birth on August 6, 1988, to Lindsay R. The State, in its role as provider of child support enforcement services, filed a petition to establish paternity in the trial court on August 18, 1997, some nine years after the child's birth. Father

was alleged to be the biological father of Lindsay R. Father's address was alleged to be a street address in Hacienda Heights, California.

The record reflects that the trial court held a hearing on October 16, 1997, following which the court ordered Father to submit to a blood test. The court continued the matter "until further notice to the parties and [an] opportunity for [a] hearing." The order also recites that "the Defendant had actual notice per Judge Kiener." Apparently this note was based on "[Mother's] statement that [Father] had flown in some days before for a funeral." Unfortunately, the certificate of service on both the order and notice of hearing are blank. The same is true of two amended orders in the record.

According to the record, the next activity in the case was over ten years later when the State gave notice of a status hearing scheduled for June 16, 2008. The certificate of service indicates that the notice was served on Father at a new address ("the new address") in Hacienda Heights, California. According to the record, the notice was also served on attorney Jes Beard. The court's order entered a few days after the status hearing on June 16, 2008, set the case for a merits hearing on August 18, 2008. The order also noted that the State's motion for default was reserved; the court's order advised Father that failure to submit to genetic testing and failure to appear could result in a default judgment being entered against him. The order bears a certificate of service on Father at his "last known address." Also, the record contains a copy of a postal service return receipt form showing an article addressed to "Mr. James G.[], [the new address], Hacienda, CA 91745." Otherwise the form is not legible. Because of a lack of legibility, as far as we can tell, the receipt form does not specifically demonstrate that there was delivery to Father or refusal by Father.

Father did not appear at the August 18, 2008, hearing. The court entered a judgment "by default based on Defendant's failure to appear and defend, the Defendant having been served with process of last order by unclaimed mail." The court further elaborated elsewhere in the order that judgment by default was being entered "because [the] court finds that defendant was adequately served with prior order advising of motion for default judgment." Father's retroactive support obligation was set at $123,334 to be paid in installments of $772 per month. A wage assignment was granted with notice to Father's employer.

Almost immediately after the wage assignment was issued, attorney Jes Beard entered an appearance on behalf of Father "for the limited purpose of challenging service of process." Attorney Beard followed his appearance with a motion "[p]ursuant to TRCP Rules 59 and 12.02(4)(insufficiency of service of process)." The motion states "the Respondent was never served with the Petition at issue in this cause as required under Tennessee law." The record contains the affidavit of Father, apparently filed in support of the motion, stating that the first notice he received of any activity in the case "during the calendar year of 2008"

was in July 2008[1] when he received notice of entry of the default judgment. Father acknowledged that he lived at "[the new address], Hacienda Heights, CA . . . for most of at least the last three years." However, Father claimed that he was separated from his wife between June 14, 2008, and July 14, 2008, and living at other places, including a motel. The court suspended the wage assignment and set Father's motion for hearing on April 22, 2009, citing the court's "desire to fully review the Respondent's supporting brief, and to have the Petitioner file a responsive brief at least 30 days before hearing the [m]otion."

The State filed a memorandum of law which referred extensively to two paternity actions in *chancery court* pertaining to Lindsay R., one of which was litigated to the point of admitted paternity and the setting of child support. Exhibits B and C to the State's memorandum are certified copies of portions of the chancery court file for docket numbers 35684 and 35880 which confirm the State's assertions. Exhibit B includes both an order establishing Father's "paternity of the child which was admitted in open court" and a copy of the transcript wherein Father's counsel at the time "admitted that the child is [Father's]." Exhibit C includes the order dismissing case 35880 and attachments to the same. The chancery court order states, in relevant part, as follows:

> This matter came before the Court on May 7, 2008. First, the Court notes as clarification of the record that there is a long history in this court with respect to these parties which includes a similar action to establish paternity filed under docket 35684 which was dismissed. Secondly, at this hearing and for the first time during these proceedings, *certified records from Washington County Juvenile Court were submitted by the individual plaintiff, [Mother], to the Assistant District Attorney William Monk who shared copies of these records with the Special Master and Counsel for [Father]. [Mother] had previously expressed that some proceedings had occurred in Washington County Juvenile Court and apparently through persistence was able to obtain the attached certified records which include a pending unresolved Petition to Establish Paternity between these parties for this child . . . which was filed August 18, 1997.* Needless to say, this was a surprise to everyone except the individual plaintiff . . . . *Father through Counsel also told the Court that he was not aware of any prior proceeding until shown copies of these documents at this*

---

[1]The July 2008 date is curious since the record reflects that the hearing that led to the default judgment was held on August 18, 2008, and the judgment itself was entered on September 3, 2008.

-3-

*hearing*. Therefore, the Court finds that it has no jurisdiction to hear this matter due to a prior suit pending in another court of competent jurisdiction. All prior orders of this Court are vacated, void, and invalid and held for naught.

(Emphasis added.) The record now before us also includes, as attachments to the order of the chancery court, the pleadings filed in the instant case in 1997, including the petition and the order finding that Father had actual notice of the petition filed in the trial court and ordering him to submit to a paternity test. This latter order recites that failure to submit may result in a judgment by default. As of May 2008, Father was represented in the chancery court proceeding by attorney Beard, his former counsel in the trial court. Father concedes litigating the matter in chancery court until it was dismissed on the basis of the case in the trial court being a prior pending action.

Father's attorney failed to appear at the hearing in the trial court scheduled for April 22, 2009, and, as a consequence of his failure, the court denied his motion challenging sufficiency of service of process. However, the court provided in its order that the "parties may agree on a hearing prior to July 15, 2009 to address the judgment through evidence otherwise the prior order becomes final." The court entered its final order in the case on January 27, 2010, after entertaining argument from Father's present counsel, attorney William L. Gribble, II, on whether the court should reconsider and set aside its judgment because of Father's assertion of insufficiency of service of process. The court concluded as follows:

> Pursuant to Tennessee Rules of Civil Procedure and TCA 36-2-305, there was proper service of process and the order should not be set aside on the basis of insufficiency of service of process. The Court also finds that the hearing and resulting order in Chancery Court of Washington County, Tennessee that dismissed all issues in that court due to a prior suit pending in Juvenile Court of Washington County, Tennessee are adequate notice of filing of this action/complaint and in addition there was notice of hearing issued to the parties by the State setting the first hearing back in this court after the dismissal in Chancery Court.

Father filed a timely notice of appeal.

-4-

II.

Father states one issue on this appeal – "[w]hether service of process . . . was ever perfected as to properly effectuate the commencement of this action."

III.

A trial court's findings of fact are reviewed *de novo* with a presumption that they are correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d); **Robertson v. Robertson**, 76 S.W.3d 337, 342 (Tenn. 2002). A trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. **Kendrick v. Shoemake**, 90 S.W.3d 566, 569 (Tenn. 2002).

IV.

Father argues that the action was never "commenced" because no summons or "notice" was issued for more than 10 years after the action was filed. We disagree with Father's conclusion. The current version of Tenn. R. Civ. P. 3[2] states, in pertinent part,

> *All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued* and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement *to toll the running of a statute of limitations* unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

(Emphasis added.) Father argues, on the purported authority of **Hine v. Commercial Carriers, Inc.**, 802 S.W.2d 218, 220 (Tenn. 1990), that in order for the case to be "commenced" summons must have been issued within a reasonable time. It is his position that the delay of ten years is clearly unreasonable and, as a consequence of this, the case now before us was not "commenced." Father's reliance upon **Hine** is misplaced. The question

---

[2]While there have been changes to this rule over the years, those changes are not relevant to the issue now before us.

in **Hine** was whether the statute of limitations had expired despite the timely filing of a complaint because of the plaintiff's failure to secure simultaneous issuance of a summons. **Id**. at 219-220. There is no statute of limitations issue in the present case. A paternity action under Tennessee law "may be instituted before or after the birth of the child and until three (3) years beyond the child's age of majority." Tenn. Code Ann. § 36-2-306(2010). Lindsay R. was born August 6, 1988, therefore the action was timely if commenced by August 6, 2009. By that time, the court had entered a judgment establishing paternity and support. The plain language of Rule 3 answers the question of when an action is commenced: "All civil actions are commenced by filing a complaint with the clerk of the court." The Court in **Hine** recognized that "the language in Rule 3 indicative of time constraints speaks to keeping process in an active mode, but is not instructive on when a summons must be issued relative to the filing of the complaint." 802 S.W.2d at 220. Father also cites **Faulks v. Crowder**, 99 S.W.3d 116 (Tenn. Ct. App. 2002). **Faulk** does not speak to when a case is commenced We hold that the plain language of Rule 3 is dispositive. This case was commenced when the petition was filed.

Our determination that the case was commenced and therefore existed so as to allow later service does not end the matter. We must now determine whether the trial court erred in holding that Father had notice sufficient to support a judgment against him. There is no contention in this case that a summons was ever issued or served.[3] Rather, the judgment is based upon "notice" of the paternity action pursuant to the following language of Tenn. Code Ann. § 36-2-305(b)(5):

> The action may be commenced by service of a summons as in
> civil cases and tried as a civil action. In the alternative, notice
> of the filing of the complaint shall be delivered to the defendant
> or the defendant's representative or shall be sent to the
> defendant at the defendant's last known address. If the
> defendant fails to make an appearance or file an answer to the
> complaint, the court may proceed as in civil cases or may issue
> a warrant for the apprehension of the defendant . . . .

The trial court determined that Father's participation in the chancery court proceedings provided "adequate notice of filing of this action/complaint and in addition there was notice of hearing issued to the parties by the State setting the first hearing back in this court after the dismissal in Chancery Court." Under the unique circumstances of this case,

---

[3]The record does include a mailing from an assistant attorney general to the court clerk asking that summons issue and be served through the secretary of state. However, the record does not indicate that anything ever came of that request.

the evidence does not preponderate against the trial court's findings. The record demonstrates beyond doubt that Father had notice of the chancery court proceedings and, in fact, appeared as a witness in those proceedings. Tenn. Code Ann. § 36-2-305(b)(5) allows service on "the defendant's representative." The same attorney who represented Father in May 2008 in chancery court in a paternity and child support case regarding Lindsay R. later appeared in September 2008 to represent him in this case. It is therefore fair to impute to Father any knowledge that his attorney Beard had of these proceedings. *See Jarvis v. Jarvis*, 664 S.W.2d 694, 696 (Tenn. Ct. App. 1983)("The question of when notice to a litigant's or former litigant's attorney constitutes reasonable notice to the client himself turns upon the nature of their relationship at that time."). It is clear that attorney Beard received a copy of the petition filed in this case while he was Father's counsel in the chancery court case. He was also charged with knowledge that his client had admitted paternity in chancery court and was paying child support in chancery court based on his admitted paternity. The attorney also knew from the pleadings in this case – that were attached to the order of dismissal in chancery court – that his client was in danger of being defaulted in this case as far back as 1997. We hold that the trial court did not err in finding Father had notice of the petition in the instant case by virtue of his participation in the chancery court proceedings.

Having accepted that Father had notice of the petition, and of its contents, we must also conclude that the trial court did not err in finding that Father had notice of the June 16, 2008, hearing including the part of the notice stating "[f]ailure to appear on this date may cause a judgment by default to be entered against you." Pursuant to Tenn. R. Civ. P. 5.01 and 5.02, any "written notice" after the original complaint can be made "by mailing it to such person's last known address." Furthermore, "[s]ervice by mail is complete upon mailing." Tenn. R. Civ. P. 5.02(1). Notwithstanding Father's claim that he was temporarily away from home at just the moment notice of the hearing would have arrived, it was incumbent on the trial court to treat the notice of the June 16, 2008, hearing as complete because it was mailed to the correct address. We therefore hold that there was no error in the trial court's findings and conclusions that Father received notice of the petition and notice of the hearing of June 16, 2008.

V.

The judgment of the trial court is affirmed. Costs are taxed to the appellant, James G. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE