IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## ELIZABETH JANE KNIZLEY v. ANDREW CARLTON KNIZLEY

**Appeal from the Chancery Court for Williamson County**
**No. 44878    Joseph A. Woodruff, Chancellor**

————————————————————

**No. M2018-00490-COA-R3-CV**

————————————————————

Finding agreement in the midst of a divorce can be difficult, but leading up to and during the trial in their divorce, husband and wife entered into certain stipulations. Among those, according to wife, was a stipulation that she would receive alimony in futuro of some amount. Following the trial, the trial court awarded wife transitional alimony. On appeal, wife argues that the court improperly created a dispute when none existed by ignoring the parties' stipulation. For his part, husband argues that parties cannot stipulate to a type of alimony and, in any event, there was no such stipulation. After a review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

Larry Hayes, Jr. and Rachel M. Thomas, Nashville, Tennessee, for the appellant, Elizabeth Jane Knizley.

William P. Holloway and Joshua L. Rogers, Franklin, Tennessee, for the appellee, Andrew Carlton Knizley.

**OPINION**

**I.**

In the Chancery Court for Williamson County, Tennessee, Elizabeth Knizley ("Wife") filed for divorce from her husband of almost 27 years, Andrew Knizley ("Husband"). As grounds, she cited irreconcilable differences. Husband answered and

filed a counter-complaint for divorce, also citing irreconcilable differences. Later both parties added the inappropriate marital conduct of the other as an additional ground for divorce.

Who was entitled to the divorce and the proper grounds were not the only areas of contention. Wife's and Husband's valuation of their marital property, which included a car collection, differed by over $1.5 million. Although there were several disagreements over the value of individual vehicles, the single largest dispute centered on the value of a 1967 Ferrari 330 GTS. Husband also contended that Wife dissipated as much as $500,000 in marital funds to renovate a barn on property owned by her father and stepmother. Besides the valuation and division of marital property, the parties could not agree on a parenting plan for their minor child, child support, or alimony.

By the time of trial in November 2017, the parties "reached agreement on many of the issues." The court went on to describe that the parties had stipulated to the value of their real estate assets and that they had agreed that the martial residence should be sold and the equity divided equally between them. They agreed that Wife would be the sole owner of two limited liability companies through which she operated a horse training and breeding business and a short-term rental business. Wife would also receive the livestock and personalty associated with the horse training and breeding business. They agreed that Wife should be designated the primary residential parent of their minor child and that Husband would receive liberal parenting time. They also agreed on the child support to be paid by Husband. Yet, the court acknowledged that "significant issues remain[ed] for the [c]ourt's determination."

One issue requiring the court's determination was the question of alimony. Both parties identified alimony as an issue in their pretrial filings. *See* Tenn. 21st J. Dist. Civ. R. 12.03. In opening statements, counsel for Wife stated that Wife was "asking for alimony in futuro, $15,000 a month." And in his opening, counsel for Husband remarked that "Husband agrees it is an alimony in futuro case" and that Husband was "asking the court to award wife alimony in the amount of $7,000 a month." Later Husband reinforced that notion in responding to questioning from both his counsel and the court:

Counsel:      . . . you're asking the Court to award your wife alimony in futuro in the amount of $7,000 per month; correct?

Husband:   Yes.

The Court:   All right. Say that again?

Counsel:      You're asking the Court – you agree your wife is entitled to alimony in futuro;

2

Husband:    Yes.

Counsel:    And so you're asking the Court to award your wife $7,000 per month in alimony in futuro?

Husband:    Yes.

Counsel:    Did you want me to go through the calculation again?

The Court:    No. I just want to make sure I heard it correctly. You're saying you believe that your wife is entitled to alimony for the rest of her life or your life, whoever is the first to die, in the amount of $7,000 a month?

Husband:    Yes.

The Court:    That's what you're saying?

Counsel:    Or remarriage or cohabitation; right?

Husband:    Yes, correct.

Following the trial, the court entered a comprehensive and detailed sixty-five page memorandum and order. The court resolved the contested question of fault, valued and equitably divided the marital property, and allocated the marital debt. The court also approved a parenting plan and awarded child support as agreed by the parties.

Pertinent to this appeal, the court did not award Wife alimony in futuro. Instead, it awarded Wife transitional alimony for nine years: $7,000 per month for the first three years, then $5,000 per month for the next three years, and $3,000 per month for the final three years. The court noted Husband's concessions regarding alimony. Nevertheless, the court concluded that it "must make [an] independent determination[ ] of whether alimony is appropriate, and if so, what type of alimony is [to be] awarded and the amount of such spousal support."

## II.

Wife frames her argument on appeal as a single issue: "whether the trial court abused its discretion by rejecting the parties' agreement that [she] was entitled to alimony in futuro." We perceive her argument as twofold. First, the court erred in making an independent determination of the appropriate type of alimony when the parties stipulated to the type of alimony. Second, even absent the parties' agreement, the trial court abused

its discretion in determining that transitional alimony was the appropriate type of alimony in light of evidence that Wife could not be rehabilitated.

A.

"A stipulation is an agreement between counsel regarding business before the court, . . . which is entered into mutually and voluntarily by the parties." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999) (citations omitted). Stipulations bind the parties and prevent them from asserting a contrary position to the stipulation, even on appeal. *Bearman v. Camatsos*, 385 S.W.2d 91, 93 (Tenn. 1964); *Rutherford Builders v. Sec. Fed. Sav. & Loan Ass'n of Murfreesboro, Tenn.*, No. 87-114-II, 1987 WL 18958, at *5 (Tenn. Ct. App. Oct. 28, 1987). While "parties may not stipulate to questions of law, . . . stipulations within the range of possibly true facts and valid legal strategies are allowed." *Overstreet*, 4 S.W.3d at 701.

Our courts recognize "the validity of an oral stipulation made during the course of a trial." *Bearman*, 385 S.W.2d at 93; *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). Even "an open court concession by the attorneys in the case constitutes a binding stipulation in this State." *Bearman*, 385 S.W.2d at 93. Still, "[a]lthough a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a proper basis for judicial decision." 83 C.J.S. *Stipulations* § 13, Westlaw (database updated Sept. 2019) (footnotes omitted), *quoted in Stumpenhorst v. Blurton*, No. W2000-02977-COA-R3-CV, 2002 WL 1751380 at *4 (Tenn. Ct. App. Feb. 27, 2002).

> Stipulations must be carefully constructed and drawn, and if they are not, they should not be incorporated in an order. Factors to consider in determining whether a stipulation was entered into properly are whether the party had competent representation of counsel, whether extensive and detailed negotiations occurred, whether the party agreed to the stipulation in open court, and whether, when questioned by the judge, the party acknowledged understanding the terms and that they were fair and equitable.

*Id.*

According to Wife, "[t]here is no doubt . . . that a stipulation existed between the parties about the fact that Wife was entitled to receive alimony *in futuro*." She points to the statement of Husband's counsel that "it is an alimony in futuro case" and Husband's testimony. Wife also notes that, in Husband's proposed findings of fact and conclusions of law submitted post-trial, he proposed that Wife would be awarded alimony in futuro of some amount.

4

While acknowledging the opening statement and his testimony, Husband argues that there was no stipulation that alimony in futuro would be awarded. Instead the "suggestion [of an alimony in futuro award] was made in the context and contingent upon Wife's share of the marital estate being reduced due to both her dissipation and [Husband's] separate property contribution . . . [to the marital estate]." Husband's testimony concerning alimony came after extensive questioning from his attorney regarding marital property and his claim that Wife had dissipated $500,000 in marital funds in the barn renovation. Before his alimony testimony, Husband also offered an exhibit with his proposed distribution of marital property. As Husband points out, among other factors, courts consider "[t]he provisions made with regard to the marital property" in determining the nature of alimony. *See* Tenn. Code Ann. § 36-5-121(i)(8) (2017).

Husband also points out that, in Wife's proposed findings of fact and conclusions of law submitted post-trial, she included a section entitled "STIPULATIONS." The section lists five stipulations in total, three in writing and two oral. The section includes no reference to a stipulation concerning the nature or type of alimony to be awarded.

After our review of the record, we agree with Husband that no stipulation was reached regarding the nature of the alimony that Wife would receive. The parties entered into both written and oral stipulations. In those circumstances in which there is no dispute that a stipulation was reached, some form of the word "stipulation" was used. For example, the written stipulation was entitled "Stipulation Regarding Value of Real Property." When the parties reached an oral stipulation during the course of the trial, counsel would use the word "stipulate" or "stipulating." Neither Husband nor his counsel mentioned the terms "stipulate," "stipulating," or "stipulation" in connection with their statements regarding alimony.

Also, the statements made in counsel's opening that "Husband agrees it is an alimony in futuro case" and that Husband was "asking the court to award wife alimony in the amount of $7,000 a month" must be understood in context. We interpret counsel's statements as a concession that alimony in futuro would be appropriate if the court adopted Husband's other positions, some of which the court ultimately rejected. We interpret Husband's testimony concerning alimony similarly. We also note that the chancellor, who had the advantages of seeing counsel and Husband and hearing the statements and testimony, did not treat the statements or testimony as a stipulation. Wife interprets this as a deliberate disregard for the parties' purported stipulation; we conclude that it was an appreciation for the context in which the statements were made and in which the testimony was given.

B.

Having determined that no stipulation was reached on the nature of the alimony, we consider whether the trial court erred in awarding Wife transitional, rather than in

5

futuro, alimony. "[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In reviewing the trial court's award of alimony, we apply an abuse of discretion standard. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.*

Tennessee law recognizes four types of alimony: (1) rehabilitative alimony; (2) transitional alimony; (3) alimony in futuro; and (4) alimony in solido. Tenn. Code Ann. § 36-5-121(d)(1) (2017). While the Legislature has expressed a preference for rehabilitative or transitional alimony awards rather than long-term support, "courts should not refrain . . . from awarding long-term support when appropriate." *Robertson v. Robertson*, 76 S.W.3d 337, 341-42 (Tenn. 2002). Alimony decisions are factually driven and "involve[ ] the careful balancing of many factors." *Gonsewski*, 350 S.W.3d at 105. In determining whether to award alimony, courts must carefully weigh the factors in Tennessee Code Annotated § 36-5-121(i). *Id.* at 109-10. The two most important factors are "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at 110 (citation omitted).

The type of alimony awarded by the trial court, transitional alimony, is appropriate if the court finds one spouse is economically disadvantaged and needs financial assistance in adjusting to the economic consequences of divorce, but rehabilitation is not necessary. Tenn. Code Ann. § 36-5-121(d)(4), (g)(1). This type of alimony is "designed to aid a spouse who already possesses the capacity for self-sufficiency" but needs temporary financial assistance to adjust to the economic reality of one income. *Gonsewski*, 350 S.W.3d at 109.

Alimony in futuro is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Id.* at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). This long-term support is awarded when one spouse is relatively economically disadvantaged and may be only partially rehabilitated or rehabilitation is not feasible. *Id.*; Tenn. Code Ann. § 36-5-121(d)(4), (f)(1). Rehabilitation is not feasible if,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1).

6

Here, the court considered the relevant statutory factors and determined that Wife "d[id] not qualify for alimony *in futuro*." The court found

> Wife is not uniquely disadvantaged to the point she is dependent upon Husband for her future support. Similarly, Wife does not require rehabilitation by way of education, or training to enable her to re-enter the work force. Wife has demonstrated an entrepreneurial spirit and a commendable work-ethic. Experience being the best teacher, the Court finds Wife's experience with the Barn Project ought to have taught her valuable lessons in managing a business she can put to good use as she pursues her post-divorce enterprises.

Still, the court found that Wife had a need of $7,000 per month, which Husband had the ability to pay.

Wife argues that the record supports an award of alimony in futuro. In doing so, Wife focuses on the court's findings relative to Husband's income. The court found that "Husband clearly has a substantially greater earning capacity than Wife." And due to his "superior earning capacity, Husband has a greater ability to acquire capital assets and to generate substantially greater income than Wife." Husband had "averaged a net monthly income of $33,168.00 over the last six (6) years," exclusive of a one-time payment of $1.16 million he had received "in 2015 as a result of a 7-year project that has now concluded." The record supports the findings relied on by Wife.

But Wife's argument that she is entitled to alimony in futuro ignores other relevant factual findings. With respect to Wife's need, the court "place[d] little weight on Wife's income and expense statements." The court found Wife's $16,188.00 per month estimate of post-divorce expenses "to be unrealistically high." The court provided several examples where Wife's projected expenses were unrealistic in terms of anticipated need, such as estimating a monthly mortgage payment of $4,303 or a car payment when Wife was being awarded at least two vehicles for her personal use. Wife's estimates also seemed to reflect a desire to maintain the same lifestyle as she had during the marriage. Yet the court found that the parties' "lifestyle substantially exceeded their income." And it warned both parties that they should not "even attempt to replicate the lifestyle they pursued during the marriage."

The court also found that Wife had substantially underestimated her post-divorce income. Prior to trial, Wife estimated monthly net income from her two rental properties of $920. The court found she could expect to receive $2,800 in monthly net income from one property alone. And it did not accept her testimony that she could earn $3,000 per month based on her education and work history. Instead, the court found that she had

7

"the ability to earn $5,000.00 per month based upon her master's degree in wildlife ecology and her experience as a horse trainer/breeder."

With respect to Husband's ability to pay, the court was skeptical that Husband could continue to generate the same levels of income for his consulting business as he had in the past. The court also allocated to Husband the vast majority of the couple's debt, both secured and unsecured, including over $200,000 owed to the IRS.

We find no abuse of discretion in the decision to award transitional alimony. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). The court applied the correct legal standard, and its factual findings are supported by the record.[1]

## III.

The parties did not reach a stipulation regarding the nature of the alimony that would be awarded. And the court did not abuse its discretion in awarding transitional alimony. So we affirm.

_____
W. NEAL McBRAYER, JUDGE

---

[1] Although nine years is a long time to award a form of short-term support, *see Roby v. Roby*, No. M2015-01987-COA-R3-CV, 2017 WL 3269000, at *4 (Tenn. Ct. App. Aug. 1, 2017), we do not find it necessary to modify the type of alimony on that basis.