IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 20, 2010

## REDA JO MILLS v. MATTHEW SCOTT MILLS

**Direct Appeal from the Chancery Court for Maury County**
**No. 06-675     Jim T. Hamilton, Judge**

_____

**No. M2009-02474-COA-R3-CV - Filed August 4, 2010**

_____

This is a divorce case.  Wife appeals from the trial court's decision denying her alimony in futuro and attorney's fees.  After reviewing the record, we discern no error and affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Wesley Mack Bryant, Columbia, Tennessee, for the appellant, Reda Jo Mills.

Joseph Ward Henry, Jr., Pulaski, Tennessee, for the appellee, Matthew Scott Mills.

**MEMORANDUM OPINION**[1]

        This case began on December 1, 2006 when the Appellant, Reda Jo Mills ("Wife") filed her complaint for divorce against the Appellee, Matthew Scott Mills, Sr. ("Husband"). In her complaint, Wife alleged as grounds irreconcilable differences, inappropriate marital conduct and adultery. On January 8, 2007, Husband filed his answer and counter-complaint for divorce in which he admitted that the parties had irreconcilable differences, but denied

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

being guilty of inappropriate marital conduct or adultery. The parties were married on April 28, 1995. The parties have one child together, born prior to the marriage, who reached the age of majority during the divorce proceedings.

Wife filed a motion requesting *pendente lite* support on December 1, 2006. The trial court entered an order on Wife's motion on January 23, 2007, pursuant to the parties agreement. This order required Husband to pay Wife "$555.00 each week in total child support and spousal support...." The order also provided that Wife would be responsible for the debts on the marital home. Attached to this order was a temporary parenting plan which noted that Husband was paying Wife $555.00 in child support and spousal support.

At some point during these proceedings, the parties attempted to unofficially reconcile. Unfortunately, the reconciliation was not successful. The case was first heard on August 7, 2008, but Husband did not appear. Following the hearing, the trial court entered a Final Decree on November 3, 2008. On December 2, 2008, Husband filed a motion for a new trial or in the alternative to alter or amend the November 3, 2008 Final Decree. Husband attached to his motion his affidavit stating that he was under the assumption that he and his Wife were "working things out" and that the hearing would not be held. Husband's motion was heard on March 20, 2009. On July 13, 2009, the trial court entered an order granting Husband a new trial based upon the agreement of the parties.

The second trial was held on October 7, 2009. The parties announced at the beginning of the trial that they had reached an agreement on the majority of the property division. According to the parties, the only issues remaining were (1) the division of Wife's IRA, (2) the determination of whether the G6 GT vehicle being driven by Wife was marital property, and (3) alimony. Both parties testified at trial. At the time of trial, Husband was forty-six years old. Husband has a high school diploma and has worked for General Motors ("GM") for the past twenty-four years. In the past, Husband worked part time for a bowling alley as a bartender. However, Husband testified that he was laid off from the bowling alley in July 2009, and provided the trial court with his "Separation Notice" dated July 1, 2009 stating he was let go due to "slow business volume." Husband further testified that the GM plant he worked for was shutting down and that as of November 2009, he would be unemployed. He testified that GM would pay him 100% of his salary for one year and at the end of that year, if the plant was still shut down, he would receive 50% of his salary for the second year. Husband admitted that this supplemental 50% would not be affected if he obtained another job during the second year.

Wife was forty-four years old at the time of trial. Wife has a G.E.D and a phlebotomy certificate. Wife testified that she had not worked since 2002 and that she had been found totally disabled for work purposes by the Social Security Administration. On direct

examination, Wife testified:

> Q (Wife's attorney): You have been determined to be totally disabled for work purposes by the Social Security Administration?

> A: Correct.

> Q: On pg 2 of your income and expense statement, you started dividing up some of your numbers regarding medical and dental. You currently have to pay a hundred fifty-six dollars for medical. What is that for?

> A: Monthly I go to a pain clinic, which is Dr. Bowers. I go see him every month to get shots in my back.

> Q: Is that part of your problem? The back condition is related to your disability?

> A: Yes.

> Q: What about prescription medications? Are you getting prescription medications for your back?

> A: I'm on five a month.

On cross examination by Husband's attorney, the following testimony occurred:

> Q (Husband's attorney): Is there any reason why in spite of receiving [social security disability], that you cannot go out and get gainful employment?

> A: Yes, there is.

> Q: It doesn't preclude you from being very active does it?

> A: There's no reason I can't leave my house. Just because you're disabled doesn't mean you can't leave your house.

> Q: Are you physically active?

A: Yes, I am.

Other than this testimony, there was no evidence entered as to Wife's disability or its affect on her ability to work. Wife admitted that Husband had paid her at least $555.00 a week from January 2007 through July 2009.

The trial court entered an order on November 6, 2009 granting the parties a divorce. In this order, the trial court found that Wife's G6 GT vehicle was not marital property as it was owned by Wife's son from a previous relationship, Wife had co-signed on the note and she took over the note on the vehicle when her son defaulted. The trial court specifically noted that it considered the "demeanor of the parties as they testified" when making its decision on alimony. In its order, the trial court explicitly stated that "wife's testimony was not credible in some aspects and evasive in others. The Court attached more weight to the testimony of the husband than the wife." The trial court also considered the previous alimony payments to Wife in making its decision on alimony. Specifically, the trial court found that Husband had paid Wife over $79,000 in alimony since January 2007. The trial court also considered the income and expenses of both parties. The trial court found that "wife has not demonstrated a compelling need for long term spousal support and the husband has demonstrated an inability to pay such support." Also, the trial court found that the terms of the distribution of the marital estate left Wife with sufficient financial assets to transition into "single life." As support for these findings, the trial court noted that Wife offered no expert testimony concerning her disability other than the fact she was receiving Social Security Disability payments. The trial court recognized that no expert testimony was required, but found that "[t]here was no testimony regarding any limitations or restriction on her ability to seek and/or obtain gainful employment" and "there is no evidence to suggest that the wife is unable to seek employment that would help her maintain a certain standard of living." The trial court specifically found that Husband's standard of living was "marginal" as he had to live with a friend and is "unable to achieve any ownership interest in his own place to live." Further, the trial court noted that while Wife had received over $79,000 in spousal support, she had not made any significant attempts to secure employment or set aside money to transition. The trial court specifically found that Wife "should or will be able to achieve a standard of living by her own efforts reasonably comparable to the standard of living enjoyed during the marriage or the post-divorce standard of living expected to be available to the other spouse." Based on these findings, the trial court awarded Wife transitional alimony in the amount of $800.00 a month for twelve months. The trial court also found that Wife has access to sufficient health insurance. Finally, the trial court found that both parties will have to alter their lifestyles and way of living and that Husband will be unemployed after November 2009.

The November 3, 2009 order also contains the parties' property division. The

-4-

property division, other than the division of Wife's IRA, was agreed on by the parties. As agreed and ordered by the trial court, the division of marital assets was as follows:

| Property | Marital Value | Award to Wife | Award to Husband |
|---|---|---|---|
| GM PSP account | $52,749.60 | $26,374.80 | $26,374.80 |
| GM PSP retirement account | $52,802.22 (60% of the total value of $88,003.70) | $26,401.11 | $26,401.11 |
| 2004 Chevrolet Tahoe | $11,150 | | $11,150 |
| 1988 Motor Home | $5,000 | | $5,000 |
| 1986 Ski Boat | $3,000 | | $3,000 |
| Wife's IRA account | $7,622.78 | $3,811.39 | $3,811.39 |
| 1996 Pontiac Sunfire | $1,000 | $1,000 | |
| Marital Home | $102,300 | $102,300 | |
| Personal Property | $8,725 | $7,500.00 | $1,225.00 |
| Total Award of Marital Assets | $244,349.60 | $167,387.30 | $76,962.30 |

The trial court also divided the marital debts. Wife was held responsible for all of the debts against the marital home, which wife testified were $80,000. Husband was held responsible for the Credit Union Debt in the amount of $7,000; the Suntrust debt in the amount of $9,500; and the loan on his GM PSP account in the amount of $3,163. Taking this division of assets and debts, Wife received $87,387.30 (60.4% ) of the net marital estate, and Husband received $57,299.30 (39.6%) of the net marital estate.

Also, the parties each received their separate property. Wife received the GT G6 vehicle valued at $10,000.00. Husband received 40% of the value of the GM PSP retirement account which he earned prior to the marriage, valued at $35,201.48.

Finally, the trial court also ordered that each party be responsible for their own attorney's fees.

On November 24, 2009, Wife filed notice of appeal. On appeal Wife raises two issues for our review:

1. Whether the trial court erred when it failed to award [Wife] alimony *in futuro* with monthly payments of at least $1,571.08.

2. Whether the trial court erred when it failed to award [Wife] her attorney's fees.

## Analysis

Tennessee law recognizes several types of spousal support: alimony in futuro, alimony in solido, rehabilitative spousal support, and transitional spousal support. Tenn. Code Ann. § 36-5-121; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). Tenn. Code Ann. § 36-5-121(d)(2) indicates a statutory preference for rehabilitative alimony over more long term forms of spousal support. *Riggs*, 250 S.W.3d at 456. The "propriety of awarding alimony as well as the adequacy of the amount awarded depends upon the unique facts of each case." *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). "The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. Thus, this Court gives awards of alimony an abuse of discretion review." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006) (citation omitted). This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. See *BIF v. Service Constr. Co.*, No. 87-136-II, 1988 Tenn. App. LEXIS 430, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative. *State Ex Rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trier of fact, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. See *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. See *id.*; *In re Estate*

*of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

Tenn. Code Ann. § 36-5-121 lists the relevant factors for a court to consider when deciding whether the payment of alimony is appropriate.[2]

---

[2]The factors the trial court should consider are:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(continued...)

Among these factors, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs*, 250 S.W.3d at 457 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002)).

*Alimony In Futuro*

Wife asserts that the trial court erred by failing to award her at least $1,571.08 a month in alimony in futuro.[3] Alimony in futuro is defined as:

> [A] payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. §36-5-121(f)(1). "[A]limony in futuro should be awarded only when the trial court finds that 'economic rehabilitation is not feasible and long-term support is necessary'" *Crabtree v. Crabtree,* 16 S.W.3d 356, 359 (Tenn. 2000)(quoting *Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993).

---

[2](...continued)
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12).

[3]Wife does not raise issue on appeal with any other aspect of the trial court's decision on alimony.

"To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties."

Tenn. Code Ann. § 36-5-121(d)(2). The purpose of alimony in futuro is "to aid the disadvantaged spouse when economic rehabilitation is not feasible in order to mitigate the harsh economic realities of divorce." *Green v. Green,* No. M2008-02759-COA-R3-CV, 2010 WL 891897 (Tenn. Ct. App. March 12, 2010)(citing *Bowie v. Bowie*, 101 S.W.3d 420, 424 (Tenn. Ct. App. 2003). Alimony in futuro may only be awarded upon a finding that a spouse may not be rehabilitated. *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001).

On the other hand, transitional alimony, "is awarded when the court finds that rehabilitation is not necessary, but that the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce." Tenn. Code Ann. 36-5-121(g)(1). The purpose of transitional alimony is to aid the person in the transition to the status of a single person. *Mathews v. Mathews*, No. M2009-00413-COA-R3-CV, 2010 WL 1712961, at *9 (Tenn. Ct. App. April 28, 2010).

In this case, the trial court awarded Wife transitional alimony for one year in the amount of $9,600.00. Accordingly, the trial court implicitly found that Wife did not need to be rehabilitated. The trial court explicitly stated in its order that Wife "should or will be able to achieve a standard of living by her own efforts reasonably comparable to the standard of living enjoyed during the marriage or the post-divorce standard of living expected to be available to the" Husband. In making these findings, the trial court carefully considered the statutory factors provided in Tenn. Code Ann. § 36-5-121 and made several findings of fact. The trial court considered the income and expenses of each party. The trial court found that Wife did not demonstrate a need for long term support and Husband demonstrated an inability to pay. Also, the trial court found that the distribution of the marital estate and the temporary support the Husband had already paid to Wife in excess of $79,000, left Wife with sufficient funds to transition into single life. Further, the trial court considered the fact that there was no evidence regarding Wife's disability other than the fact she is receiving disability payments from the Social Security Administration. The trial court compared the parties' standard of living during separation and found that Husband's is "marginal". Further, the court found that both parties are going to have to adjust their standards of living

and ways of life due to the divorce. Also, the trial court explicitly stated that it found Wife not to be credible and to have been evasive. Based on these combined findings, the trial court made its determination regarding alimony.

After throughly reviewing the record, we find that Wife has not demonstrated that the trial court abused its discretion in failing to award her alimony in futuro. The trial court applied the proper legal standard and appropriately weighed the statutory factors. We find that the evidence does not preponderate against the trial court's findings of fact. The record is devoid of any assertion by Wife that she cannot be rehabilitated, a finding required for an award of alimony in futuro. Moreover, other than the vague statement that Wife cannot work for "some reason," the record is devoid of any evidence as to Wife's disability or the reason for her inability to work. Also, Wife testified at trial as her ability to regularly go out to bars, and admitted being arrested several times in the past for domestic assault and for getting into physical altercations at bars. This testimony negates her vague assertion of physical disability. Further, the trial court made a determination on Wife's credibility, finding her to be not credible and to be evasive. Wife has not provided this Court with, nor did we find in our review of the record, clear and convincing evidence to contradict the trial court's credibility findings. We further point out that Wife need not be able to live at the same standard of living as enjoyed during the marriage, but must at least be able to live at the standard enjoyed by Husband post divorce. Tenn. Code Ann. §36-5-121(d)(2). We find that the standard is met in this case based upon the facts in the record. While it is apparent that both parties could benefit from more income, we find that the record does not illustrate how the Husband will be able to obtain more income. Often, as the trial court found in this case, parties will need to adjust their standard of living after a divorce. Consequently, we affirm the trial court's decision to deny Wife alimony in futuro.

*Attorney's Fees*

Wife next contends that the trial court erred in failing to award her attorney's fees. An award of attorney fees constitutes alimony in solido. ***Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); ***Cranford v. Cranford***, 772 S.W.2d 48, 52 (Tenn. Ct. App. 1989). Therefore, the trial court must consider the statutory factors used when considering a claim for alimony. ***Sullivan v. Sullivan***, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). Like other awards of alimony, we review the trial court's decision on attorney's fees under an abuse of discretion standard of review. ***Aaron v. Aaron***, 909 S.W.3d 453, 457 (Tenn. Ct. App. 2007) Under this standard, we will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001).

An award of attorney's fees is only appropriate when:

> the spouse seeking them lacks sufficient funds to pay his or her own legal expenses . . . or would be required to deplete his or her resources in order to pay these expenses. Where one party has been awarded additional funds for maintenance and support and such funds are intended to provide the party with a source of future income, the party need not be required to pay legal expenses by using assets that will provide for future income.

*Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000)(internal citations omitted).

Wife has not demonstrated on appeal that the trial court abused its discretion in denying her request for attorney's fees. In making its determination on alimony, the trial court carefully analyzed the statutory factors. As stated before, we find that the evidence does not preponderate against the trial court's findings of fact. The trial court did not make a finding on fault, but simply granted the parties a divorce. We note that Wife alleged fault and Husband admitted committing adultery. However, the admitted adultery did not occur until a year and a half after Wife filed for divorce. Other than the testimony as to the admitted adultery, no other evidence was entered as to any other inappropriate conduct on the part of Husband. Also, it is apparent from the record that during the trial Wife, misled the trial court as to the cause of the divorce. She testified that Husband asked for the divorce, moved out and he filed for divorce. However, the record clearly shows that Wife was the first to file for divorce. Tenn. Code Ann. §36-5-121(i)(11) allows the trial court to consider fault in awarding alimony, when it deems appropriate. However, the trial court did not make a finding of fault and declined to consider fault when making its award of alimony. Moreover, there is not clear and convincing evidence to contradict the trial court's findings on credibility.

Upon reviewing the record, we find that combining the trial court's division of marital assets and debts along with each parties' separate property, Wife has approximately ninety-seven thousand dollars in assets, while Husband has approximately ninety-two thousand dollars in assets.

We also considered each parties' statement of income and expenses. Using Husband's

statement of expenses, and his income as alleged by Wife[4], we find that currently Husband has $471.14 left each month, after paying Wife transitional alimony. However, this amount will change in November 2010 when Husband's income may be decreased by as much as fifty percent. If this occurs, Husband's income will fail to meet his current expenses by $609.99 each month.[5] We find Husband's expenses to be reasonable. He is currently paying $500 a month to rent a room from a friend, which includes utilities. His expenses do include a $300 amount for "recreation" expenses, which Husband testified is for going out and doing things such as movies, snacks or ball games. However, if Husband obtains his own apartment, his expenses would increase, negating any excess funds. Husband testified that an apartment would cost $600 per month. Husband would also have the added expense of higher utilities but did not provide the court with this figure. Also, Husband's list of income and expenses did not provide for any payment on the $8,980.47 which he owes in attorneys fees for this case.

We recognize that according to Wife's income and expense statement, she has a deficit of $2,261.51 a month after receiving the transitional alimony. However, we find this number to be misleading. There was no proof at trial as to Wife's earning capacity or lack thereof. There was no proof of her earning history prior to her alleged disability. We do know that she has the equivalent education level of Husband[6] and that she maintains a phlebotomy certificate. Wife did not prove that she was unable to work. Therefore, once she obtains employment and her own income, her situation should improve. Moreover, we note that Wife's listed expenses include $499 a month for Cobra insurance which the trial court found was unnecessary as Wife would be able to obtain sufficient insurance, and $399.97 a month for the vehicle, which she took over payments on when her son defaulted on his car note. Further, we find that Wife's expenses are somewhat excessive and as the trial court found, Wife will need to adjust her standard of living, as did Husband. For example, Wife states that she spends $574.60 a month for utilities, a home phone, cable, internet and a cell phone, some of which Wife admits covers an adult child. Wife also states she spends $61.98 a month for a pool. Wife's expenses include $1,188.03 towards the mortgage on her home.

_____

[4]Wife asserts that to determine Husband's monthly income one must multiply Husband's net weekly income of $868.20 by 52 weeks and then divide by twelve months, resulting in $3,762.26 per month. To obtain his monthly income, Husband multiplied his net weekly income of $868.20 by 4 and one-third weeks, resulting in an income of $3,733.26.

[5]This does not include any payments for alimony as the trial court only ordered Husband to pay transitional alimony for twelve months and we have affirmed the trial court's denial of alimony in futuro.

[6]Husband has a high school degree. Wife has her G.E.D.

Pursuant to the property division, Wife has over $20,000 in equity in the home. Wife was ordered by the trial court to refinance the home and if she could not, then to sell the home. When Wife refinances her home or sells it, this monthly expense should significantly decrease. Finally, Wife's expenses include $200 a month towards her attorney's fees.

From the proof presented at trial, it appears that once both parties adjust their standard of living, they will be in substantially similar economic positions. We review the trial court's decision under an abuse of discretion standard and will not overturn its decision merely because reasonable minds could differ. Considering the above mentioned factors and the findings of the trial court, we do not find that the trial court abused its discretion in denying Wife's request for attorney's fees.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the Appellant, Reda Jo Mills and her surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE