# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 23, 2002 Session

## NIKKI LYNN HERRINGTON BOWIE v. RICHARD ROY BOWIE

**Appeal from the Chancery Court for Knox County**
**No. 132605-1     John F. Weaver, Chancellor**

### FILED OCTOBER 29, 2002

### No. E2001-02923-COA-R3-CV

_____

Richard Roy Bowie ("Husband") and Nikki Lynn Herrington Bowie ("Wife") were divorced in 2000. Wife was awarded sole custody of the couple's young child. Husband was granted visitation pursuant to a custody agreement filed March 1, 2000. The Trial Court found that Wife's monthly need was $7,200, but that Husband was unable to pay this amount. The Trial Court awarded Wife monthly child support in the amount of $1,057, and alimony *in futuro* of $1,500 per month. Husband appeals the type of alimony awarded to the Wife, the Trial Court's finding regarding the amount of Wife's monthly need, and the amount of alimony awarded. Wife raises an additional issue regarding whether the Trial Court erred in not awarding her attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

James F. Logan, Jr., Cleveland, Tennessee, for the Appellant, Richard Roy Bowie.

Charles H. Child, Knoxville, Tennessee, for the Appellee, Nikki Lynn Herrington Bowie.

# OPINION

## Background

This appeal involves a dispute regarding the type and amount of alimony awarded to Wife pursuant to a final divorce decree entered in 2000. In 1996, after 24 years of marriage, the parties separated and Wife, who was not gainfully employed outside the home, filed a complaint for separate maintenance and child support. An order granting judgment by default was entered in August of 1997, and an order of separation was entered in September of 1997, requiring Husband to pay $10,000 per month to Wife as child support and spousal support. Husband never paid this amount.

Husband filed a complaint for divorce in 1999 alleging irreconcilable differences. Wife countersued for divorce alleging, *inter alia,* adultery. At trial, Husband admitted to having several affairs during the course of the marriage. The Trial Court granted Wife a divorce on the ground of adultery.

The parties have three children, only one of which was a minor at the time of trial. Wife was granted sole custody of the minor child. Husband was granted visitation pursuant to a custody agreement filed March 1, 2000, and ordered to pay child support in the amount of $1,057 per month.

During the marriage, the parties lived in various places including New York, Boston, Africa, Germany, and Tennessee. They established a high standard of living that included regular travel and the acquisition over the years of such items as a Porsche 911, a Porsche 944, two timeshares in Florida, a Steinway grand piano valued at trial at $20,000, and at least one airplane. The majority of the moves made by the parties appear to have been to further or facilitate Husband's career as a doctor.

The record on appeal shows that Husband, who was 54 years old when the trial started, is a general surgeon with his own medical practice. Husband also receives income from two mini-storage warehouse facilities that he owns. Evidence at trial showed that Husband's net income from his medical practice had fallen in recent years from over $190,000[1] in 1996, to approximately $29,000 in 1999. Husband attributes his decline in income to several factors including the sale and restructuring of a hospital with which Husband was affiliated and upon which Husband depended for patients; the lack of return on Medicare and TennCare patients due to reduced fee allowances and increased processing expenses; and the fact that Xantus, a contract provider with which Husband had a contract, is now defunct. Despite the great disparity, and recent substantial decline, in Husband's income over the last five or six years, the Trial Court did not find Husband willfully underemployed. The Trial Court found Husband's income to be $7,200 per month.

---

[1]For the sake of simplicity, we use round numbers in this Opinion whenever possible.

During the 24-year marriage, Wife, who was 50 years old at the time of trial, was primarily a stay-at-home mother. She graduated from Emory and Henry in 1971 with a major in music and a minor in elementary education. While at Emory and Henry, Wife received several honors including being voted Miss Emory and Henry by the administration, being voted May Queen by her fellow students, and becoming first runner-up to Miss Virginia. Evidence at trial showed that Wife also had studied opera at Indiana University and then at the Julliard School of Music, but did not obtain a degree at either institution. Wife did obtain a few vocal jobs approximately 25 years ago, but the evidence showed that some of these "jobs" were nonpaying and that Wife did not earn enough from her vocal jobs to support herself. The Trial Court found that Wife's work history consisted of a position as a receptionist/switchboard operator at a floral exchange in Boston approximately 20 years ago, work with a church choir, and some very limited work at Husband's medical office and mini-warehouses.

When dividing the marital property, the Trial Court noted that the amount awarded to Husband slightly exceeded that awarded to Wife and stated that the court would take this into account when making the additional provisions of the divorce, such as alimony. The Trial Court found Wife's monthly need to be $7,200, but also found Husband's current income was only $7,200 per month. The Trial Court granted Wife alimony *in futuro* in the amount of $1,500 per month.

## Discussion

Husband raises the following issues on appeal: (1) did the Trial Court err in awarding Wife alimony *in futuro* instead of rehabilitative alimony; (2) did the Trial Court err in finding Wife's level of need was $7,200 per month; and (3) did the Trial Court err in requiring Husband to pay $1,500 per month in alimony. Wife raises the additional issue of whether or not the Trial Court erred in not awarding her attorney's fees.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

This Court has held:

> Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.

*Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998) (citations omitted). A trial court's determination regarding spousal support generally will not be altered by this Court unless the trial court abused its discretion. *See Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). It is the roll of this Court to correct errors below and not to fine tune a trial court's decision.

When determining whether a spouse should receive support, how much support, and what type of alimony is warranted, trial courts are to consider the factors outlined in Tenn. Code Ann. § 36-5-101(d)(1), which provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001).

While all relevant factors must be considered when setting the amount of an alimony award, need and the ability to pay are the critical factors. *Anderton*, 988 S.W.2d at 683. Discussing the intent behind alimony, our Supreme Court has held: "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton*, 988 S.W.2d at 682).

-4-

Although "the legislature has demonstrated a preference for an award of rehabilitative alimony[,]" *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000), the relevant alimony statute, Tenn. Code Ann. § 36-5-101(d)(1), does contemplate, under the appropriate circumstances, a long-term award of alimony, or alimony *in futuro*, providing: "[w]here there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, . . . then the court may grant an order for payment of support and maintenance on a long-term basis . . . ." Tenn. Code Ann. § 36-5-101(d)(1) (2001). "[T]he purpose of [alimony *in futuro*] is to provide financial support to a spouse who cannot be rehabilitated." *Burlew*, 40 S.W.3d at 471.

Husband's issues on appeal regarding the Trial Court's award of alimony to Wife concern both the type and the amount of alimony. We first will consider the issue regarding the type of alimony the Trial Court awarded to Wife.

Recently, our Supreme Court issued its opinion in *Robertson v. Robertson* regarding the issue of alimony, including the type of alimony. *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002). Mr. Robertson was employed by TVA and his average yearly income was approximately $60,000. *Id*. at 342. Ms. Robertson had a yearly income of approximately $22,000. *Id*. Accordingly, the Robertsons had a disparity in income, although not as pronounced as the parties in this matter.

Despite this disparity in income between the husband and wife in *Robertson*, our Supreme Court held that the trial court's award of rehabilitative alimony, rather than alimony *in futuro*, to Ms. Robertson was not an abuse of discretion. *Id*. The Supreme Court in *Robertson* reversed this Court which found Ms. Robertson should be awarded alimony *in futuro* since she "could not be rehabilitated to a reasonable standard of living, viewed in the context of her pre-divorce standard of living." *Id*. at 339. The *Robertson* Court stressed the importance of considering every relevant factor provided by the alimony statute and applying the statute's factors on a case-by-case basis. *Id*. at 341. The Court recognized the legislature's preference for rehabilitative alimony and discussed the purpose of rehabilitative alimony as follows:

> [R]ehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. . . . ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'"). It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Id*. at 340-41 (citations omitted).

The *Robertson* Court, in finding that the trial court's award of rehabilitative alimony to Ms. Robertson was not an abuse of discretion, reviewed Ms. Robertson's work history as a full-time homemaker and part-time substitute teacher and her recent attainment of a 4-year degree in education. *Id*. at 342. The Court found it significant that Ms. Robertson anticipated beginning her teaching career with a salary of approximately $22,000, stating that "[i]n light of Ms. Robertson's

college education and new employment, we agree that Ms. Robertson, though economically disadvantaged, is capable of rehabilitation." *Id*. at 343. In addition, the Court found that the "rehabilitative alimony could assist Ms. Robertson in obtaining her master's degree to increase her earning capacity in the future." *Id*.

We believe the facts of *Robertson* are readily distinguishable from the facts of this case. Wife's circumstances show that, unlike the economically disadvantaged spouse in *Robertson*, it is highly unlikely that she can rehabilitate herself through further education or training. The Trial Court found it unlikely that Wife would be able to do anything to appreciably remedy her economic disadvantage and that Wife's economic rehabilitation is not feasible.

In light of *Robertson*, a trial court cannot rely upon just one of the factors of the alimony statute, the disparity in the parties' incomes. *Id*. at 340. The proof in the record in this case, however, shows that other relevant factors establish Wife's need for alimony *in futuro*. The Trial Court properly considered all of the relevant statutory factors including the relative earning capacities of the parties, the relative education and training of the parties, the long duration of the marriage, the age of the parties, the extent to which it would be undesirable for the Wife to be employed outside the home as she is the custodian of the parties' minor child, the standard of living established by the parties during the marriage, the Wife's intangible contributions to the marriage, the relative fault of the parties, the provisions made with regard to the marital property, the equities between the parties, Wife's education having been in music, and Wife's having a very limited work history.

While we acknowledge that the legislature has expressed a preference for rehabilitative alimony in Tenn. Code Ann. § 36-5-101(d)(1), the record on appeal shows, as found by the Trial Court, that Wife's possibilities to rehabilitate herself are limited. *See* Tenn. Code Ann. § 36-5-101(d)(1)(2001). The evidence contained in the record does not preponderate against this finding by the Trial Court. Accordingly, after applying all relevant statutory factors to the facts and circumstances shown by the record, we hold the Trial Court's award of alimony *in futuro*, as opposed to rehabilitative alimony, was not an abuse of discretion, and we affirm on this issue.

As far as the Husband's issue regarding whether the Trial Court erred in finding that the Wife's level of need was $7,200 per month, we find that the facts do not preponderate against this finding. When a Trial Court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the Trial Court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999). Since the facts do not preponderate against the Trial Court's finding, we affirm on this issue. We also note that while the Trial Court found Wife's level of need to be $7,200 per month, the Trial Court awarded only $1,500 per month in alimony.

We next address Husband's issue regarding whether the Trial Court erred in requiring Husband to pay $1,500 per month in alimony. The Trial Court found Wife's needs to be $7,200 per month less child support of $1,057 per month or $6,143. The Trial Court further found that

Husband's current monthly income of $7,200 was insufficient to allow him to meet Wife's needs. The evidence found in the record before us does not preponderate against either of these factual findings. After considering all relevant factors and the record before us, we hold that the Trial Court's award of alimony in the amount of $1,500 per month was not an abuse of discretion. Therefore, we affirm on this issue.

Finally, we address whether the Trial Court erred in refusing to grant to Wife her attorney's fees. "'[A]n appellate court should not reverse for 'abuse of discretion' a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining.'" *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999)(quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The record does not support a finding that the Trial Court's decision was against logic or reasoning, or that it caused an injustice or injury to the Wife. Therefore, we affirm on this issue as well. Wife also has requested that she be awarded her attorney's fees and costs incurred on appeal. After consideration of all relevant factors and in the exercise of our discretion, we decline Wife's request.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Richard Roy Bowie, and his surety.

_____
D. MICHAEL SWINEY, JUDGE