IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2011

# LAURIE JO EDWARDS v. GARY WAYNE EDWARDS

**Appeal from the Chancery Court for Rutherford County**
**No. 090813DR      David M. Bragg, Judge**

---

**No. M2010-02223-COA-R3-CV - Filed June 19, 2012**

---

Wife was granted divorce on the grounds of Husband's inappropriate marital conduct. The trial court distributed the marital property and awarded Wife transitory alimony for four years. Wife appealed, arguing she should have been awarded a larger portion of the marital estate and was entitled to alimony *in futuro*. She also argued she should have been awarded her attorneys' fees. We affirm the trial court's judgment in all respects. The trial court equitably distributed the marital assets and did not abuse its discretion in awarding Wife transitional alimony to help her adjust to living as a single person again.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Bert W. McCarter, Murfreesboro, Tennessee, for the appellant, Laurie Jo Edwards.

Michelle Blaylock-Howser, Murfreesboro, Tennessee, for the appellee, Gary Wayne Edwards.

## OPINION

This appeal primarily concerns the division of the parties' marital property resulting from a divorce as well as the trial court's decision to award Wife transitional alimony rather than alimony *in futuro*. Wife also appeals the trial court's denial of her request for attorneys' fees. Both Wife and Husband seek an award of the attorneys' fees they incurred on appeal.

# I. BACKGROUND

Laurie Jo Edwards ("Wife") and Gary Wayne Edwards ("Husband") were married for over twenty-three years when Wife filed a petition for divorce in June 2009. The parties had two grown children who were not affected by the proceedings. Wife alleged Husband had committed adultery and sought an absolute divorce on the grounds of inappropriate marital conduct. Wife sought temporary and permanent possession of the marital residence. She also requested temporary and permanent spousal support as well as medical insurance. Husband filed an Answer, in which he admitted to engaging in inappropriate marital conduct, and a Counter Complaint, in which he sought an absolute divorce on the grounds of Wife's inappropriate conduct. Like Wife, husband alleged Wife engaged in adulterous acts.

Wife sought temporary relief during the divorce proceedings, and a Special Master issued a report dated July 31, 2009. The Special Master directed Wife to begin seeking employment immediately and directed the parties to sell the marital residence on the open market. Wife was permitted to continue living in the marital residence during the divorce proceedings, and she was made responsible for maintaining the property and paying the bills as they came due. Husband was directed to pay Wife $4,750.00 per month pending the final hearing on the parties' divorce.

# II. TRIAL COURT PROCEEDINGS

The parties tried their case over a period of two days in May 2010. The evidence included testimony by Husband and Wife as well as by the parties' real estate agent working to sell the parties' marital residence. The parties also introduced numerous exhibits regarding their assets in an attempt to determine both valuation and which party was entitled to the same.

Husband is an executive working for Nissan, and Wife is not employed. Wife has a university degree and was employed when the parties married in 1986. Wife continued to work until 1998, when the parties decided it would be best for Wife to stop working so she had more time to devote to the parties' children and to her elderly grandparents. At the time of trial Husband was 56 years old and Wife was 53 years old.

The evidence shows, and the parties agreed, that they lived a life of luxury throughout their marriage and denied themselves nothing money could buy. The largest assets at the time of trial included the marital residence, another residence where Husband's mother lived, a Harley Davidson motorcycle, three automobiles, Wife's 401(k), Husband's 401(k), Husband's Supplemental Executive Retirement Plan ("SERP"), and Husband's pension.

### III. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

At the end of the trial the court granted Wife a divorce and dismissed Husband's Counter Complaint. The court determined which property constituted marital property and how the property should be divided equitably between Wife and Husband. The court also determined that Wife was entitled to receive transitional alimony for four years rather than alimony *in futuro* as Wife requested.

The trial court explained its reasoning in dividing the marital property between Wife and Husband:

> In making its determination as to the division of the marital property, the Court took into consideration the long term duration of this marriage, the fact that both parties have made significant contributions through their work, individual assets and separate property to further the marriage and to provide for their family. In addition, the Court has taken into consideration the age, physical and mental health, vocational skills, employability and earning capacity, estate, financial liabilities and financial needs of each of the parties. Currently the husband is employed receiving a high salary. Something could happen and he may not be employed tomorrow. The wife appears to have a college degree and be employable but has been unable to find employment in an area which she feels is appropriate at this point in time. Wife testified she would like to go back to an office environment similar to what she had when she left her job and the Court finds that may be unrealistic.
>
> . . . . .
>
> In making its division of the debt, the Court also took into consideration the relative ability of each party for future acquisitions. The husband is in a position to currently make payments toward the debts, make payments to maintain the house so it can be sold and help repay the debt he has been assigned as well as the debt he is going to incur to buy the wife's interest in the property.

The trial court then addressed the issue of spousal support and awarded Wife transitional alimony in the amount of $2,000 per month for a period of four years.

Wife filed a Motion to Alter or Amend in which she asked the trial court (1) to require husband to designate her as the beneficiary of a term life insurance policy Husband already owned for the purpose of securing Husband's alimony obligation and (2) to extend the

COBRA benefits the court awarded Wife from eighteen months to three years. The trial court denied Wife's motion without discussion, and Wife duly filed a Notice of Appeal with this Court.

In her appeal Wife argues the trial court erred in failing to award her a greater percentage of the parties' marital assets. She also argues the court erred in granting her transitional alimony rather than alimony *in futuro* and in failing to require Husband to secure his alimony obligation by designating her as the beneficiary of a term life insurance policy Husband already owned. Finally, Wife asserts the trial court erred in failing to award her attorneys' fees at trial and argues that she is entitled to attorney's fees at the trial level and on appeal. Husband asks that Wife be ordered to pay his attorneys' fees on appeal.

## IV. ANALYSIS

### A. The Trial Court Properly Balanced the Relevant Factors in Making an Equitable Division of the Marital Estate.

A trial court is required to classify the divorcing parties' assets as either separate or marital property, and then the court must divide the marital assets equitably after weighing the relevant factors set forth in Tenn. Code Ann. §36-4-121(c). *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010). The relevant factors include the following:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. §36-4-121(c) (Supp. 2011).

The total value of the parties' assets was over two million dollars. Wife was awarded separate property worth $46,055 and Husband was awarded separate property worth approximately $30,000. The court awarded each of the parties half of the two 401(k) accounts, the two pensions, and Husband's SERP account. At the time of trial the combined value of the 401(k) accounts and the SERP account was approximately $548,000.00. The pensions were expected to provide each party with $2,185.75 per month, according to Wife.

Husband presented evidence of a loan in the amount of $8,250 the parties made in 2007 and 2008 to Husband's grown son from a former marriage. Husband expects his son to repay that loan at some indefinite time in the future, and the court awarded that asset to Husband. The parties owned three automobiles and one motorcycle. Only one of the automobiles had any debt associated with it. The court awarded all three automobiles to Wife and the motorcycle to Husband.[1]

_____

[1]Husband testified that his employer provided him with an automobile, which automobile is not part of the marital estate.

In distributing the parties' marital assets, the trial court considered each factor set forth in section 36-4-121(c). The court recognized that Wife had contributed to Husband's ability to climb the corporate ladder by staying home to take care of the children and maintaining the home so Husband could concentrate more on his employment opportunities. The court acknowledged that Husband's salary afforded him the opportunity to pay a larger portion of the debt than Wife could pay since she had no income other than what she was receiving from Husband. The court recognized that each party contributed to the acquisition of the marital assets and that neither party had dissipated the assets. Finally, the court recognized that Wife held a university degree and should be able to become gainfully employed, enabling her to acquire future capital and assets following the divorce. Wife's calculations show that the value of marital property the court awarded to her totaled $920,750.07, and the total marital property the court awarded to Husband totaled $1,261,181.00. Husband was made responsible for the parties' debt in the amount of $427,576.13, whereas Wife was made responsible for only $8,150.00 of debt.[2]

Applying the factors set forth in section 36-4-121(c) is not a mechanical process, and the trial court has wide discretion in dividing the marital estate. *Larsen-Ball*, 301 S.W.3d at 234. We give considerable deference to the trial court's findings and are reluctant to disturb a trial court's division of marital property unless there is insufficient evidence to support the trial court's decision or the division somehow results in an error of law or misapplication of statutory requirements. *Id*. We review the trial court's findings of fact *de novo* with a presumption of correctness and will uphold those findings unless the preponderance of the evidence points to the contrary. *Id*. at 234-35; *Pippin v. Pippin*, 277 S.W.3d 398, 403 (Tenn. Ct. App. 2008); *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); Tenn. R. App. P. 13(d).

Wife's objections to the court's distribution of the marital estate are limited to (1) its valuation of the marital residence, (2) its award to Husband of his grown son's $8,250 debt, and (3) the distribution of Husband's 2010 employment bonus.

### 1. The Marital Residence

We turn first to the trial court's valuation of the marital residence. Based upon Husband's testimony and documentary evidence, the court valued the parties' marital residence at $560,000. The court stated the following in its Final Decree of Divorce

---

[2]The record includes conflicting information about the amount of debt associated with the Altima awarded to Wife, which is the only marital debt the trial court made Wife responsible for. The Joint Stipulation of Counsel filed April 30, 2010, indicates the Altima has a lien on it in the amount of $8,150, and that is the value we adopt for purposes of this opinion.

regarding how it arrived at this value:

The Court further finds the [parties'] home . . . is marital property. There is some dispute as to the value of the home; however, it is not disputed that the home has been on the market during the entire pendency of this divorce and the parties have been unable to sell it. They are here today because they have been unable to agree on a sales price. The husband has requested that he be allowed the purchase the wife's interest in the home for $118,000.00 based upon the home having a value of $560,000.00. In valuing the home, the Court has considered that the home is to be sold and husband is receiving the commission reduction on the value of the home. By purchasing the wife's interest in the property, the husband assumes all the debt associated with the property which currently stands at $307,645.07. The Court further notes that during the pendency of this divorce there has been approximately $33,000.00 pumped into the home that will never be recovered. Based upon the testimony of the parties, the Court finds the asset should be disposed of in a meaningful way that provides wife with assets to secure housing more suitable to her needs and places the burden of paying the mortgage and utility bills on the home on the husband who at least has an income at this time and has the ability to take on the debt.

Wife does not take issue with the court's method of determining her equitable share. Instead, she argues the court should have adopted the valuation offered by the parties' realtor and found the house had a value between $570,000 and $590,000 rather than adopting Husband's position and finding it had a value of $560,000. She argues that her equitable share would have been larger if the residence's valuation had been higher.

The trial testimony showed the parties have put the marital residence up for sale and currently have it listed for $619,900. The real estate agent testified the property had been appraised several months earlier at a value of $630,000. The house was on the market for about 250 days by the time of trial and had been shown a number of times. Two offers had been made, but neither offer led to a contract to sell the house.[3] The realtor testified that she thought the parties should be able to sell their house for an amount between $575,000 and $590,000.

_____

[3]The realtor testified that in December 2009 one interested purchaser made a written offer of $520,000 for the house, the parties countered at $590,000, the potential purchaser came back with an offer of $540,000, and Wife and Husband did not respond back. Then the month before the trial another interested purchaser made a written offer of $575,000, contingent upon selling their house, to which Husband and Wife countered back with a price of $610,000. These potential purchasers countered back at $585,000, and the parties responded with a price of $590,000. By the time of trial the parties had not heard further from those particular purchasers.

Husband introduced evidence suggesting the house be valued at $560,000. Husband presented a document at trial labeled "Proposal On 5/5/10" and "Settlement Plan Gary Edwards to Laurie Edwards." Included in this proposal was Husband's suggestion that he buy Wife's portion of the marital residence based on the house's valuation of $560,000. Husband testified about this proposal and explained that assuming the house was worth $560,000, he would pay Wife $118,000 for her (half) portion of the equity in the house, taking into consideration the mortgage and the realtor's commission fee of six percent.[4]

The Court of Appeals has recently addressed how a court is to treat conflicting evidence of an item's valuation:

> When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App.1996). Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard*, 986 S.W.2d at 231. Accordingly, they are entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d at 875; *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).

*Owen v. Owen*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007); *see Phelps v. Phelps*, 2011 WL 2535026, *5 (Tenn. Ct. App. June 24, 2011) (decisions regarding the value of marital property are questions of fact which appeals courts will not second-guess unless the valuation is not supported by a preponderance of the evidence); *Dilley v. Dilley*, 2011 WL 2015395, *11 (Tenn. Ct. App. May 23, 2011) (trial court has discretion to value marital property from the range of values presented by the parties and their witnesses).

The evidence presented at trial does not preponderate against the trial court's adopting a value of $560,000 for the marital residence. While the realtor testified the house's value was between $575,000 and $590,000, Husband suggested the house be valued at $560,000. An owner of an asset is competent to ascribe a value to his or her asset. *Wallace v. Wallace*, 733 S.W.2d 102, 108 (Tenn. Ct. App. 1987). Additionally, the actual offers made reflect a

---

[4]The record indicates that Husband filed a Motion for Order Approving Sale of Real Property in March 2010. In his motion, Husband explained the parties had received an offer of $550,000 for the house, which Wife rejected because she did not think it was enough money. Husband stated in the motion that "[i]t is in the parties' best interest to sell the house at a reduced price of $560,000.00 or upon what the market demands if such offers are received." The record does not reflect the outcome of this motion. However, the motion supports Husband's position that the value of the marital residence is $560,000.

lower market value. The proposal made by Husband and adopted by the court relieved Wife of liability for any further drop in value and provided her with a certain amount quickly.

The issue for us to decide is whether Wife received an equitable portion of the entire marital estate. Regardless of whether the court assigned a higher or lower value to the marital residence, the court did not abuse its discretion in awarding Wife $118,000 as her portion of the equity in the residence.[5]

### 2. Loan to Husband's Grown Son

We next turn to the parties' $8,250 loan to Husband's grown son. Wife argues she should have been awarded one-half of this loan rather than having the entire amount awarded to Husband. Wife is entitled to an equitable portion of the marital estate, but she is not entitled to a one-half portion of each asset. *See Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005) ("equitable" division is not the same as an "equal division" of marital property). The trial court has "wide latitude in fashioning an equitable division of marital property." *Id*.; *see Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996) (division of marital property is not equitable just because it is not equal).

The parties did not introduce any formal loan documentation evidencing the loan or indicating when (or if) Husband's son is obligated to repay this loan. Husband testified his son has promised to repay the loan when he can. Due to the uncertain nature of the son's repayment of the loan and the likelihood that Husband will be in closer contact with his son than Wife will be in the years to come, it makes more sense to award the collection of that loan to Husband. There is sufficient evidence to support the trial court's decision, and there is no error in application of relevant legal principles.

### 3. Husband's 2010 Bonus

The trial court's Final Decree of Divorce addressed Husband's 2010 employment bonus and divided that as follows:

> With regard to the 2010 employment bonus the husband may or may not receive from his employer, the Court finds that any bonus he may receive for work up until the date of this hearing, the net amount shall be divided in half. One-half of the net amount is to be applied to these debts which have been

---

[5]Contrary to Wife's argument, a higher valuation would not necessarily translate into a larger portion of the house's value being awarded to her. After all, the trial court is only required to divide the sum of the assets equitably; it is not required to divide each one of them equally.

-11-

allocated to the husband. The other half is to be divided equally between the parties.

In her brief, Wife refers to an award by a Special Master in July of the previous year and argues in essence that the trial court's distribution of the bonus does not comply with the Special Master's award and should therefore be revised. A review of the Special Master's Report indicates that the Special Master divided among the parties certain "monies held in abeyance by Order of this Court entered on July 9, 2009 in the amount of $20,000.00." However, the Special Master does not describe that sum as a "bonus." The trial court's Final Decree of Divorce addresses husband's 2010 bonus, not his 2009 bonus. In any event, a challenge to the distribution in the final decree must be based upon the factors set out earlier, and we find no basis to assert that the decision with regard to the 2010 bonus is not supported by the evidence or the law. We find Wife's argument on this issue to be without merit.[6]

**B. The Trial Court Did Not Abuse its Discretion in Awarding Wife Transitional Alimony for Four Years.**

The court awarded Wife transitory alimony in the amount of $2,000 per month for a period of four years and ordered Husband to provide Wife with COBRA benefits for eighteen months.[7] Wife contests the trial court's decision to award her transitional alimony rather than alimony *in futuro* and argues the alimony amount is insufficient. Wife contends "an award of at least $6,825 per month is necessary for [her] to enjoy anything which resembles the standard of living the parties established during the marriage."

In reaching its decision to award Wife transitional alimony rather than alimony *in futuro*, as Wife requested, the trial court explained:

> As to the matter of spousal support, the Court finds in this particular case that the spouse was employed and making a good salary at the time she gave that up to support the family, to encourage the husband to go forward in his career, recognizing that he was having to travel a lot, spend a lot of time at work, and she was placed with the additional burden and responsibility of caring for the parties' children. That is difficult when one of the parties is living and

_____

[6]It is too late in any case to appeal the Special Master's Report or request that it be revised. Rule 53.04(2) of the Tennessee Rules of Civil Procedure provides the parties have ten days in which to file an objection to a report by a Special Master appointed by the court. Neither party objected to the Special Master's Report within the requisite ten days.

[7]Husband testified that Wife's health care coverage cost him $315 per month.

working in another community.

The Court is charged with considering the contributions made by the parent, and where one spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse.

In addition, the Court's considered the overall statutory factors and the equities between the parties such as their relative earning capacity, obligations and needs and financial resources of each party. The Court recognized that all of the debt based on the Court's division today, except for the Altima which was equity in excess of its debt, is assigned to the husband. The Court has considered that in making a determination concerning spousal support.

The Court also considered the relative education and training of each party and the ability and the opportunity of the parties to secure education and training. The Court recognizes that the wife has a college degree, has the opportunity to obtain employment and to enjoy the benefit of that employment after the marriage.

The Court also considered the duration of the marriage, the age and mental condition of each party, the physical condition of each party and specifically the extent to which it would be desirable for the parties to seek employment outside the home.

Mr. Edwards certainly is employed. Mrs. Edwards, were she to be employed outside the home, no longer has the obligations of taking care of the children, she no longer has the obligations of taking care of her parents, and certainly it would be to her benefit to find employment somewhere she would consider to be suitable to provide her with the opportunity to earn additional income as well as to receive some additional benefits.

The Court has also taken into consideration the testimony that the wife, although she does not want to draw, can draw based on the husband's pension and her pension benefits immediately as well as the 401(k) assets that are available to her. In addition, the Court has considered the $118,000.00 that the husband is preparing to pay for her interest in the marital home.

-13-

In this case the Court finds that rehabilitation is not necessary, that Ms. Edwards is already in a position where she can seek and find employment. However, the Court does believe she needs assistance to adjust to the economic consequences of divorce, and therefore, the Court is awarding transitional alimony in the amount of $2,000.00 per month. . . .

The Court recognizes that husband is of an age and in a job category where there may be some change and so the Court would make that transitional alimony modifiable should there be a significant change in circumstance. However, it is not to terminate should wife either remarry or have the benefit of someone else living with her during that period of time. If there is a significant change up or down in husband's salary, either party could apply to the Court for a modification. . . .

Tennessee Code Annotated section 36-5-121(i) (Supp. 2011) sets forth the factors a court is to consider to determine the nature, amount, length of term, and payment of alimony, if any, to award:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in §36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). The Tennessee Supreme Court has recently addressed alimony awards and has set forth the standard of review appellate courts are to use in reviewing trial court awards:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard

does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *see Bowie v. Bowie*, 101 S.W.3d 420, 423 (Tenn. Ct. App. 2002) ("It is the role of this Court to correct errors below and not to fine tune a trial court's decision.").

Tennessee recognizes four different types of spousal support: (1) alimony *in futuro*, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. §36-5-121(d) (Supp. 2011); *Gonsewski*, 350 S.W.3d at 107. Alimony *in futuro* is also known as periodic alimony and is awarded on a long term basis or until the recipient's death or remarriage. Tenn. Code Ann. §36-5-121(f)(1) (Supp. 2011). The statute provides that alimony *in futuro* may be awarded in the following circumstances:

when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. §36-5-121(f)(1) (Supp. 2011).

The *Gonsewski* court reviewed this statute and explained that while the economically disadvantaged spouse may want to continue living the same lifestyle post-divorce that he or she enjoyed during the parties' marriage, this may not be possible:

Alimony *in futuro* is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. While enabling the spouse with less income to maintain the

-16-

pre-divorce lifestyle is a laudable goal, the reality is that two persons living separately incur more expenses than two persons living together. Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle. It is not surprising, therefore, that the prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony.

*Gonsewski*, 350 S.W.3d at 108 (quotations omitted) (citing *Riggs v. Riggs*, 250 S.W.3d 453, 456 n.2 (Tenn. Ct. App. 2007); *Robertson*, 76 S.W.3d at 340;and *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)).

Transitional alimony is appropriate when the trial court determines that "the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce . . . ." Tenn. Code Ann. §36-5-121(g)(1) (Supp. 2011). Transitional alimony helps the economically disadvantaged spouse make the transition from living as a married person to living as a single person. *Gonsewski*, 350 S.W.3d at 109 (citing *Mills v. Mills*, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010) and *Montgomery v. Silberman*, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009)).

The legislature has established a preference for short term alimony over long-term alimony to help the economically disadvantaged spouse become more self-sufficient. *Gonsewski*, 350 S.W.3d at 109. In fact, the Tennessee Supreme Court has directed that "alimony *in futuro* should be awarded only when the court finds that economic rehabilitation is not feasible or long-term support is necessary." *Id*. (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004) and *Robertson*, 76 S.W.3d at 341-42). The Court of Appeals explained the rationale for this in *Melvin v. Johnson-Melvin*:

The statute reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

2006 WL 1132042, at *4 (Tenn. Ct. App. April 27, 2006) (quoted with approval by *Sheppard v. Sheppard,* 2010 WL 3749420, at *6 (Tenn. Ct. App. Sept. 27, 2010)).

The trial court awarded Wife transitional alimony after determining that long-term support is not necessary. Husband was 56 years old at the time of trial and currently earns

around $203,000 per year as an the director of engineering, parts quality, and quality assurance at Nissan. Wife was 53 years old at the time of trial and has a university degree. While she testified to some health concerns, she did not suggest these concerns would prevent her from working. The court determined she should be able to find a job providing her with a reasonable income and benefits, and we believe the preponderance of the evidence supports this finding.[8]

The court awarded Wife a very small portion of the marital debt, and the court took the amount of her debt into account in determining that transitional alimony was a more appropriate form of alimony to award Wife than alimony *in futuro*. Not only will Wife receive $118,000 in cash from Husband for her equity portion of the marital residence, but she also has the opportunity on a monthly basis to draw on the 401(k) assets and the pension benefits the court awarded her. Husband introduced evidence that Wife would be able to draw at least $2,500 per month from his 401(k) and pension, beginning immediately following the divorce. In addition to these monies, Wife has her own 401(k) and pension to draw from.

Wife may not be able to return to her pre-divorce standard of living, but there is no evidence that Husband will return to his pre-divorce standard of living or that Wife's standard of living will be lower than Husband's standard of living post-divorce. Husband is responsible for over $400,000 of marital debts, and this number does not include the additional $118,000 Husband is required to pay Wife for her interest in the marital residence. Husband testified he will have to secure a loan to satisfy this debt to Wife. Husband also testified that he hoped to retire in the next few years.

Based on the evidence presented at trial we cannot say the trial court abused its discretion or incorrectly applied the statutory factors to the evidence in awarding Wife transitional alimony. *See Gonsweski*, 350 S.W.3d at 112 ("appellate court should not reverse a trial court's alimony decision unless the trial court has abused its discretion"). Accordingly, we affirm the trial court's judgment awarding Wife transitional alimony for four years in the amount of $2,000 per month and COBRA benefits for eighteen months.

### C. The Trial Court Was Not Required to Secure Husband's Alimony and COBRA Payments with a Life Insurance Policy Naming Wife as the Beneficiary.

---

[8]While Wife testified she had applied for some positions advertised on the internet, the court found she had not used much effort to find employment and that she should be able to find a suitable job if she tries a little harder.

Wife argues the trial court erred by refusing her request that Husband be required to name her as a beneficiary on his life insurance policy to secure his obligation to pay her four years' of alimony and her COBRA benefits for eighteen months. Wife relies on the case *Shooster v. Shooster*, 2009 WL 586037 (Tenn. Ct. App. 2009), to support her argument. The trial court in *Shooster* ordered the husband to pay the wife alimony *in futuro*, which was to end only upon the wife's remarriage or the death of one of the parties. *Id.* at *2. The trial court also ordered the husband to pay the wife's health care premiums as part of the alimony award. The court ordered the husband to maintain his current life insurance policy and to add a death benefit in the amount of $100,000 payable to the wife. *Id.*

The husband in *Shooster* appealed the trial court's judgment and argued, *inter alia*, that the trial court erred in requiring him to maintain the wife as a beneficiary on his life insurance policy. *Id.* at *3. The Court of Appeals affirmed the trial court's judgment, explaining that requiring the husband to secure his alimony payments by naming the wife as a beneficiary on his life insurance policy was authorized by statute and was within the trial court's discretion. *Id.* at *6. Tenn. Code Ann. §36-5-121(l) (Supp. 2011) provides as follows:

> To secure the obligation of one party to pay alimony to or for the benefit of the other party, the court may direct a party to designate the other party as the beneficiary of, and to pay the premiums required to maintain, any existing policies insuring the life of a party, or to purchase and pay the premiums required to maintain such new or additional life insurance designating the other party the beneficiary of the insurance, or a combination of these, as the court deems appropriate.

The *Shooster* court did not find the statute required the trial court to order the payor spouse to add the payee spouse to his life insurance policy; only that the statute authorized the trial court to do so. By using the word "may" rather than the word "shall," the legislature has indicated that the courts are to use their discretion in this regard. Given the limited term of alimony the trial court ordered Husband to pay and the lack of evidence suggesting Husband was in poor health or unable to satisfy his alimony obligations, we do not believe the trial court abused its discretion in refusing Wife's request that she be added to Husband's life insurance policy as a beneficiary to secure his alimony obligations.

### D. The Trial Court Did Not Err in Requiring Husband and Wife to Pay Their Own Attorneys' Fees.

In its Final Decree of Divorce the trial court addressed the parties' attorneys' fees as follows:

-19-

Any attorney fees not previously assessed to [the parties'] particular credit cards are to be paid by each of the parties. The Court finds that based upon the division of the assets, each of the parties is in a position to pay their own attorney fees other than those amounts that have already been paid, placed on charge cards that have been ordered to be paid by husband.

As discussed earlier, the trial court ordered Husband to pay all the credit card debt the parties introduced into evidence, regardless of who was responsible for the charges. The testimony indicated that this debt included $5,257.50 of Wife's attorneys' fees. Wife alleges she incurred an additional $21,448.20 in legal fees and expenses and that Husband should be responsible for paying this amount as well.

The trial court has discretion to award attorneys' fees, and we will not reverse the trial court's decision regarding an award of fees unless Wife can demonstrate that the trial court abused its discretion. *Watson v. Watson*, 309 S.W.3d 483, 500 (Tenn. Ct. App. 2009) (citing *Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007) (itself citing *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)) and *Eldridge v. Eldridge*, 137 S.W.3d 1, 25 (Tenn. Ct. App. 2002)); *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002).

An award of attorneys' fees in a divorce case often takes the form of an award of alimony *in solido*. *Gonsewski,* 350 S.W.3d at 113; *Watson*, 309 S.W.3d at 501; *Yount*, 91 S.W.3d at 783 (citing *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992)). The trial court should therefore consider the statutory factors set forth in Tenn. Code Ann. §36-5-121(i) in determining whether to award attorneys' fees. *Gonsewski*, 350 S.W.3d at 113; *Watson*, 309 S.W.3d at 501 (citing *Owens*, 241 S.W.3d at 495-96 (further citations omitted)). However, the Tennessee courts have stated that an award of attorneys' fees is appropriate "only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." *Gonsewski*, 350 S.W.3d at 113 (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997) and *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980)).

Wife relies on *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. App. Ct. 1988), in support of her argument that the trial court erred in refusing to require Husband to pay her attorneys' fees. The *Gilliam* court found that the husband was very litigious and caused the wife to incur more fees than she otherwise would have by using "obstructionist tactics" throughout the divorce proceedings. *Id.* at 86-87. The *Gilliam* court affirmed the trial court's award of attorneys' fees to the wife, noting:

While Wife was awarded some liquid assets as marital property, we do not feel justified in requiring her to utilize marital property to pay her attorney fees,

which would have the effect of totally extinguishing these liquid assets.

*Id.* at 87.

In this case Wife does not contend Husband used obstructionist tactics during the parties' divorce, and the record does not suggest Husband was litigious or caused Wife to incur more fees than was necessary. Moreover, Wife does not contend she would be extinguishing her liquid assets by paying her attorneys' fees herself. We cannot conclude that the trial court abused its discretion and, accordingly, affirm the trial court's judgment requiring each party to bear the cost of their own attorneys' fees.

Both Wife and Husband have requested an award of the legal fees they incurred on appeal. An appellate court has discretion to award appellate attorneys' fees in cases involving support and in frivolous appeals. *Church v. Church*, 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010). Factors we take into consideration include the ability of the party seeking the fee award to pay the fees, his or her success on appeal, whether the appeal was taken in good faith, and any other relevant and equitable factors. *Id.* (citing *Darvarmanesh v. Gharacholou*, 2005 WL 1684050, *16 (Tenn. Ct. App. July 19, 2005)). Applying the relevant factors to the circumstances in this case, we decline to award either Wife or Husband their attorneys' fees incurred on appeal.

## V. CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court and decline to award either party their appellate attorneys' fees. Costs of this appeal are assessed against the appellant, Laurie Jo Edwards, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-21-